MINNESOTA–DAKOTAS RETAIL HARDWARE ASSOCIATION, et al., Respondents,

and

Sibley Company, Intervenor, Respondent,

Modern Merchandising, Inc., et al., Intervenor, Respondents,

Minnesota Food Retailers Association, Intervenor, Respondent,

v.

The STATE of Minnesota, et al., Appellants,

and

Minnesota Automobile Dealers Association, Intervenor, Respondent.

No. 47900.

Supreme Court of Minnesota.

May 11, 1979.

---

Warren Spannaus, Atty. Gen., Richard B. Allyn, Sol. Gen., Stephen F. Befort, Peder B. Hong, Sp. Asst. Attys. Gen., St. Paul, for appellants.

Harstad & Rainbow, John R. Stoller and C. Blaine Harstad, Minneapolis, for Minnesota-Dakotas Retail Hardware Assn. et al.

Oppenheimer, Wolff, Foster, Shepard & Donnelly and William P. Studer, St. Paul, for The Sibley Co.

Dorsey, Windhorst, Hannaford, Whitney & Halladay, Michael E. Bress, and Peter S. Hendrixson, Minneapolis, for Modern Merchandising, Inc., et al.

LeVander, Gillen, Miller & Magnuson and Arthur F. Gillen, South St. Paul, for Minnesota Food Retailers Assn.

William Flynn, Minneapolis, for Minnesota Automobile Dealers Assn.

Heard before SCOTT, WAHL, and IRVINE, JJ., and considered and decided by the court en banc.

WAHL, Justice.

The State of Minnesota and the Director of the Consumer Services Section of the Department of Commerce (hereinafter, collectively, "Consumer Services") appeal from the judgment in the Ramsey County District Court invalidating Minn.Regs. CS 20–34.[1] Although we agree with the trial court's determination that Consumer Services was not delegated the power to make legislative rules, we must reverse the order invalidating the rules on the ground that they may be permitted to stand as interpretative rules without the force and effect of law.

The regulations in issue were promulgated by Consumer Services on July 3, 1975, following extensive public hearings and both review and approval by the Office of the Attorney General. While they were to be effective September 1, 1975, several co-plaintiffs petitioned the district court on August 24, 1975 for a declaratory judgment invalidating the regulations.[2] Implementation of the regulations was temporarily restrained on September 2, 1975, and temporarily enjoined on October 6, 1975. After arguments by the parties and the several intervenor groups, the trial court, on January 27, 1977, granted plaintiffs' motion for summary judgment, invalidating the regulations "on grounds that the Consumer Services section had no statutory authority for the issuance of any substantive rules and regulations." Thus, the sole issue for

---

1. The propriety of such appeals was recently confirmed by L.1977, c. 443, § 4, amending Minn.St. 15.0417 (effective June 3, 1977): "Any party to proceedings under section 15.0416, including the agency, may appeal an adverse decision of the district court to the supreme court."

2. "The validity of any rule may be determined upon the petition for a declaratory judgment thereon, addressed to the district court where the principal office of the agency is located, when it appears that the rule, or its threatened application, interferes with or impairs, or threatens to interfere with or impair the legal rights or privileges of the petitioner. The agency shall be made a party to the proceeding. The declaratory judgment may be rendered whether or not the petitioner has first requested the agency to pass upon the validity of the rule in question." Minn.St. 15.0416.

our consideration is whether Minn.Regs. CS 20–34 are invalid, exceeding the authority delegated to Consumer Services by Minn.St. 45.16.

■ 1. Upon review, this court necessarily conducts an independent examination of administrative action to determine its propriety without according special deference to the review already afforded in the trial court. Cf. *Reserve Mining Co. v. Herbst,* 256 N.W.2d 808, 824 (Minn.1977); *No Power Line, Inc. v. Minnesota Environmental Quality Council,* 262 N.W.2d 312, 325 (Minn.1978).

The instant appeal requires a clarification of the scope and nature of judicial review of prospective administrative regulations under Minn.St. 15.0417. Our previous opinions have examined administrative rules or actions only in the context of specific circumstances of a contested application. See, e. g., *State, by Spannaus v. Lloyd A. Fry Roofing Co.,* 310 Minn. 528, 246 N.W.2d 696 (1976).[3] In those cases, the scope of judicial review is as set forth in Minn.St. 15.0425:

"In any proceedings for judicial review in any court of decisions of any agency as defined in section 15.0411, subdivision 2 (including those agencies excluded from the definition of agency in section 15.-0411, subdivision 2) the court may affirm the decision of the agency or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the administrative finding, inferences, conclusions or decisions are:

"(a) In violation of constitutional provisions; or

"(b) In excess of the statutory authority or jurisdiction of the agency; or

"(c) Made upon unlawful procedure; or

"(d) Affected by other error of law; or

"(e) Unsupported by substantial evidence in view of the entire record as submitted; or

"(f) Arbitrary or capricious."

■ By contrast, the instant action is preliminary to any attempt by the attorney general or Consumer Services to cite any party for violation of these regulations or to otherwise apply or enforce them in any administrative, civil, or criminal proceeding, for they have not yet become effective. Consequently, the standard of review is necessarily more restricted. Broad and far-reaching scrutiny of a rule or regulation, based upon hypothetical facts, is a premature exercise by the judiciary when the actual application or enforcement of the rule remains subject to prosecutorial discretion or formal or informal variance or waiver procedures. Cf. *Reserve Mining Co. v. Minnesota P.C.A.,* 294 Minn. 300, 200 N.W.2d 142 (1972).[4]

The limited scope of judicial review is clearly reflected in the distinctions between Minn.St. 15.0425, applicable in contested cases, and Minn.St. 15.0417, applicable in declaratory judgment actions such as the instant case:

"In proceedings under section 15.0416 the court shall declare the rule invalid if it finds that it violates constitutional provisions or exceeds the statutory authority of the agency or was adopted without compliance with statutory rule-making procedures." § 15.0417.

■ 2. While three statutory grounds exist upon which to challenge the validity of the regulations, the sole ground raised by these proceedings is whether the regulations exceed the statutory authority of the

---

**3.** At issue in *Snyder's Drug Stores v. Minnesota Bd. of Pharmacy,* 301 Minn. 28, 221 N.W.2d 162 (1974), was only the standing of a consumers' group to intervene in the declaratory judgment proceeding brought pursuant to Minn.St. 15.0416.

**4.** *Reserve Mining Co. v. Minnesota P.C.A.,* 294 Minn. 300, 200 N.W.2d 142 (1972), permitted limited judicial inquiry into the reasonableness

of the application of the contested regulation, after its general validity had been established. However, that inquiry was found to be authorized by Minn.St. 115.05, subd. 7, which this court held controlling, rather than by Minn.St. 15.0416. The clear inference from the decision is that Minn.St. 15.0416 would not have permitted further inquiry. Minn.St. 115.05, subd. 7, has been repealed. L.1976, c. 76 § 8.

agency. Minn.St. 15.0417. While it is true that Consumer Services does not have legislative rule-making power, we conclude that these rules come within the statutory power conferred upon Consumer Services to promulgate interpretative rules and are a valid exercise of that power.

The statutory powers conferred upon Consumer Services are set forth in Minn.St. 45.16, which provides:

"Subdivision 1. The section of consumer services shall have the responsibilities and duties prescribed by this section and section 45.17 and such other authority as may be conferred by the commissioner of commerce.

"Subd. 2(a) Act as the representative of the governor in all matters affecting consumer affairs;

"(b) Enforce the provisions of law relating to consumer fraud and unlawful practices in connection therewith as set forth in sections 325.78 and 325.79, and the attorney general shall act for the division in pursuing the remedies set forth in section 325.80;

"(c) Make recommendations to the chairman of the commerce commission for transmission to the governor and the legislature for such statutory needs as may exist in adequately protecting the consumer;

"(d) Receive registration statements and annual reports of persons soliciting charitable funds in accordance with the requirements of sections 309.50 to 309.61, in lieu of the duties of the secretary of state in connection therewith. The duties of the secretary of state under such sections are hereby abolished and the activity assigned to the department of commerce, division of licensing and consumer services as provided herein;

"Adopt, pursuant to the administrative procedures act, rules and regulations to implement the provisions of this section.

"Subd. 3. Repealed by Laws 1973, c. 638, § 66.

"Subd. 4. The director of consumer services with the approval of the chairman of the commerce commission may assign any of his duties and responsibilities to sections which he may create within his division.

"Subd. 5. Sections 45.15 and 45.16 are effective upon the appointment of a director."

By its terms, § 45.16 empowers Consumer Services to adopt rules and regulations to implement the provisions *"of this section."* (Italics supplied.) Thus, the statute only authorizes rules and regulations to be adopted to enable Consumer Services (a) to act as the representative of the governor; (b) to enforce the provisions of the law relating to consumer fraud; (c) to make recommendations to the legislature; and (d) to receive registration statements and annual reports from certain persons. This appeal focuses upon the nature of the power conferred upon the agency in subdivision 2(b), the power to enforce § 325.78 and § 325.79,[5] and in subdivision 2(d), the power to adopt rules and regulations.

In *McKee v. Likins,* 261 N.W.2d 566, 577 (Minn.1977), we observed three definite types of administrative agency rules: procedural, legislative and interpretative. We noted that interpretative rules are those rules coming within the definition of "rule" in Minn.St. 15.0411, subd. 3, which are promulgated to make specific the law enforced or administered by the agency.[6]  261

---

5. Minn.St. 325.78–325.80 are entitled "Prevention of Consumer Fraud." Section 325.78 defines certain terms used in the statute, and § 325.79 prohibits fraud, misrepresentation and deceptive practices in connection with the sale of merchandise and prohibits referral· and chain-referral selling.

6. Unlike the federal administrative procedures act, Minn.St. ch. 15 does not except interpretative rules from the procedural requirements for adoption of regulations. Minn.St.1974, § 15.0413, subd. 1, which provided that agency standards, statements of policy or interpretations of general application and future effect did not have the effect of law unless adopted as a rule in accordance with ch. 15, was repealed by L.1975, c. 380, § 3. Under the current statute, all "rules," as defined by § 15.0411, subd. 3, whether or not they have the effect of law, are subject to the statutory rule-making procedure. See, C. Auerbach, Administrative Rule-Making

N.W.2d 578, n. 12. Legislative rules, on the other hand, are enacted pursuant to delegated powers to make substantive law, and, in contrast to interpretative rules, have the force and effect of law. See, Cooper, State Administrative Law at 174–75, Davis, Administrative Law Treatise, § 5.03 (Supp. 1978). In reviewing the power to designate controlled substances delegated by the legislature to the State Board of Pharmacy, we held in *State v. King,* 257 N.W.2d 693 (Minn.1977), that the legislature intended to delegate rule-making authority to the Board to revise the statutory schedules enumerating controlled substances. Minn.St. 152.02, subds. 8 and 12, essentially provided that the Board could add substances to or delete or reschedule substances listed in § 152.02 by agency regulation promulgated in compliance with rule-making provisions of Minn.St. ch. 15. Under our analysis in *King,* the authority vested in the Board was to make legislative rules.

 In the instant case, however, authorization for the promulgation of legislative regulations with the force and effect of law which define conduct that violates §§ 325.78 and 325.79 is absent from the statute, and, as we recently stated in *State, by Spannaus v. Lloyd A. Fry Roofing Co.,* 310 Minn. 528, 534, 246 N.W.2d 696, 700, n. 6 (1976):

> "* * * Courts cannot properly aid the agency by construing the statute to confer upon it implicit authority, when to do so would contravene the legislature's apparently deliberate failure to explicitly grant it such authority."

Thus, we hold that Minn.Regs. CS 20–34 are authorized, and should be permitted to stand, as interpretative rules, adopted to implement Consumer Services' duty to enforce the provisions of law relating to consumer fraud and unlawful practices by making more specific the acts that will be considered by Consumer Services to violate the Minnesota laws on consumer fraud.[7] As explained in Davis, Administrative Law of the Seventies, § 5.03 (1976), the power to enforce necessarily encompasses the authority to announce in advance the circumstances when such power will be used. As mere statements of agency policy to be applied by the agency in enforcing state law, the weight and effect to be given to Minn.Regs. CS 20–34, as applied to a particular fact situation, must be judicially determined on a case-by-case basis, taking into consideration a plurality of factors.[8] See, Davis, Administrative Law Treatise § 5.05 at 317.

Reversed.

OTIS, J., took no part in the consideration or decision of this case.

---

in Minnesota, 63 Minn.L.Rev. 151, 158–59. Only agency rules concerning internal management which do not directly affect the rights of or procedure available to the public or certain rules of specified agencies are excluded from the procedures set forth in ch. 15.

**7.** *Eastern Kentucky Welfare Rights Org. v. Simon,* 165 U.S.App.D.C. 239, 251, 506 F.2d 1278, 1290 (1974), vacated on other grounds, 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1975), illustrated the distinction between interpretative and legislative rules, quoting *Gibson Wine Co. v. Snyder,* 90 U.S.App.D.C. 135, 194 F.2d 329 (1952): "An interpretative rule is one which does not have the full force and effect of a substantive rule but which is in the form of an explanation of particular terms in an Act. If

you had an expression in a statute such as 'Interurban Railway,' the query might come up as to what is an 'interurban railway.' A particular agency may adopt a rule defining an interurban railway. That, in a sense, may be called an interpretative rule."

**8.** Whether or not a violation of an interpretative rule constitutes a violation of the statute must be adjudicated at such time a controversy arises over the enforcement of §§ 325.78 and 325.79, as interpreted by Minn.Regs. CS 20–30, within a specific fact situation. See, *Continental Oil Co. v. Burns,* 317 F.Supp. 194, 200 (D.Del.1970); *American President Lines, Ltd. v. Federal Maritime Comm'n,* 114 U.S.App.D.C. 418, 421, 316 F.2d 419, 422 (1963).