**CABLE COMMUNICATIONS BOARD of the State of Minnesota, Petitioner,**

**City of St. Paul, Petitioner,**

**Continental Cablevision of St. Paul, Inc., Petitioner,**

v.

**NOR–WEST CABLE COMMUNICATIONS PARTNERSHIP, Respondent,**

**Ronald E. Wills, Intervenor/Respondent.**

**Nos. C2–84–865, C4–84–866.**

Supreme Court of Minnesota.

Oct. 26, 1984.

Hubert H. Humphrey, III, Atty. Gen., Andrea Mitau Kircher, Sp. Asst. Atty. Gen., St. Paul, for Cable Communication Bd.

Edward P. Starr, City Atty., Jane A. McPeak, Deputy City Atty., Deborah J. Palmer, Ernest I. Reveal, St. Paul, for City of St. Paul.

Wayne G. Popham, Lee E. Sheehy, Minneapolis, for petitioner Continental Cablevision of St. Paul Inc.

Ronald Haskvitz, Minneapolis, Harold R. Farrow, E. Nicholas Selby, Oakland, Cal., for Nor-West Cable Comm. Partnership.

Stanley G. Peskar, St. Paul, amicus curiae for League of MN Cities.

AMDAHL, Chief Justice.

Nor-West Cable Communications Partnership, an unsuccessful applicant for a cable communications franchise in the City of St. Paul, appealed to the Court of Appeals from an order of the Minnesota Cable Communications Board. In that order, the Board granted a certificate of confirmation to St. Paul's franchisee, Continental Cablevision of St. Paul, Inc., and denied the request of Nor-West for a contested case proceeding under the Minnesota Administrative Procedure Act (MAPA), Minn.Stat. §§ 14.57–14.62 (1982). The Court of Appeals, by order dated May 29, 1984, remanded the matter to the Board with instructions to convene a contested case hearing before a hearing examiner. Continental, the City of St. Paul, and the Board sought review by this court. We must determine (1) whether the Cable Communications Act, due process principles, or Board regulations require initiation of a contested case hearing in this case as a matter of right; (2) whether the Board, in utilizing a three-part method of analysis to determine whether this matter was substantially contested within the meaning of its rules, improperly promulgated an interpretive rule in violation of MAPA; and (3)

whether the Board's finding that this matter was not substantially contested was supported by substantial evidence. We reverse.

The Cable Communications Act created the Minnesota Cable Communications Board to "oversee development of the cable communications industry in Minnesota." Minn.Stat. § 238.01 (1982). The Board is empowered to prescribe the procedures and practices municipalities must follow in granting franchises to cable companies, including minimum standards for inclusion in franchises. Minn.Stat. § 238.05, subd. 2 (1982). The Board may promulgate such rules and regulations as it finds necessary or appropriate to carry out its statutory duties. Minn.Stat. § 238.06, subd. 1 (1982).

Municipalities must require a franchise of any cable communications company providing service within the municipality. Minn.Stat. § 238.08, subd. 1 (1982). No franchise is effective, however, unless the Board issues a certificate confirming the franchise. Minn.Stat. § 238.09, subd. 1 (1982). A certificate of confirmation is issued to the franchisee only upon compliance with the minimum standards required by the Board's rules for award of a cable communications franchise. Minn.Stat. § 238.05, subd. 4 (1982); Minn.Admin.R. 2320.0300 (1983). The Cable Communications Act, however, allows municipalities to formulate franchise requirements in excess of Board minimum standards, provided that such requirements are not inconsistent with Board standards. Minn.Stat. § 238.-08, subd. 2 (1982).

The Board has described its function as follows:

> [T]he statutory duties of the Cable Board do not include *de novo* review of the award of the cable communications franchises by municipalities. The legislative intent appears to be that the Board set the parameters of the franchise process and to [sic] then ensure that those procedural requirements are complied with through its authority to deny a certificate of confirmation.

*In re Northern Cablevision of Minneapolis, Inc.'s Application for Certification of the Minneapolis Cable Communications Franchise;* Minnesota Cable Communications Board Findings of Fact, Conclusions, Memorandum, and Order at 50 (May 5, 1981) (incorporating the Hearing Examiner's Report) [*Northern Cablevision*].

The City of St. Paul began its current search for a cable communications franchisee by appointing a task force to study the cable communications needs of the City. The task force completed its needs assessment report in September 1982. The City then prepared a Request for Proposals Providing Cable Communications Services to the City of St. Paul (RFP), issuing the RFP on November 1, 1982. On March 1, 1983, the proposal deadline, three cable companies submitted proposals for a St. Paul cable franchise. Those companies were Continental Cablevision of St. Paul, Inc., Group W Cable of St. Paul, and Nor-West Cable Communications Partnership.

The City retained an outside consultant to evaluate the three proposals. The consultant provided the City with a preliminary assessment of the proposals on April 5, 1983. Each applicant responded to the preliminary assessment and on June 15, 1983, the consultant submitted its final evaluation of the proposals to the City.

The City Council passed a resolution awarding a cable franchise to Nor-West Cable Communications Partnership on July 5, 1983. The resolution, passed by a 4–3 vote, made the award contingent upon a final agreement between the City and Nor-West leading to the enactment of a franchise ordinance, and contingent upon the receipt of a certificate of confirmation from the Minnesota Cable Communications Board. Mayor George Latimer vetoed the council resolution on July 13, 1983. The City Council failed to override the Mayor's veto.

By a resolution dated July 29, 1983, the City Council again awarded a St. Paul cable franchise, this time to Continental Cablevision of St. Paul. The award was made contingent upon the enactment of a fran-

chise ordinance embodying a final agreement between the City and Continental, and upon receipt of a certificate of confirmation from the Board. The City and Continental reached final agreement concerning the details of the franchise, and the City passed a franchise ordinance on November 10, 1983. Mayor Latimer approved the ordinance on November 14.

Continental applied to the Board for a certificate of confirmation on November 21, 1983. After examining the franchise agreement and other documents, the Board staff determined that Continental and the City had complied with the procedures and standards of the Board and recommended on January 6, 1984, that the Board issue Continental a certificate of confirmation. On January 10, 1984, Nor-West filed a complaint with the Board seeking denial of Continental's certificate of confirmation or, in the alternative, a contested case (trial-type) hearing.

Nor-West alleged numerous deficiencies in the City's franchising process. Nor-West complained of several violations of Board rules, including eight instances where Continental's application allegedly failed to comply with the minimum requirements of the City's Request for Proposals, 15 instances where the City's franchise ordinance allegedly amended Continental's application substantially, and four instances where the City's franchise ordinance allegedly lacked required recitations. Nor-West also alleged that the City violated Board rules by evaluating applicants with criteria and priorities which differed from those set forth in the Request for Proposals and by issuing an exclusive cable franchise in violation of state law. Finally, Nor-West alleged violations of state antitrust law and the first and fourteenth amendments of the Federal Constitution.

The Board's staff reviewed Nor-West's complaint and concluded that

> The petition raises serious questions about the franchising decision made by the City of St. Paul, and provides new, as yet unsubstantiated, information about

the procedure followed and about certain franchise provisions.

Persuaded that the St. Paul franchise award was substantially contested by Nor-West, the staff then recommended that the Board convene a contested case hearing.

Board rules provide that the Board shall hold a public meeting on applications for a certificate of confirmation. If an application is "substantially contested" at the public meeting, "the Board may adjourn the public meeting and deem the matter a contested case * * *." Minn.Admin.R. 2320.-0500 (1983). At its January 13, 1984, meeting, the Board first heard comment from Continental and the City in support of confirmation of the cable franchise. Representatives of Nor-West then spoke in opposition to confirmation and requested that the Board convene a contested case hearing. Following these presentations, the Board determined that it needed additional information before it could decide whether the matter was substantially contested. Consequently, Continental and the City were given 10 days to submit memoranda in response to the Nor-West complaint. Nor-West would then reply in writing to these memoranda.

The Board met again to consider the St. Paul cable franchise on February 29 and March 9, 1984. The parties had provided the Board with over 400 pages of argument and supporting documentation since the January 13 meeting. The Board also had before it an extensive documentary record of the St. Paul franchising process, which was submitted to the Board by Continental in support of its application for confirmation by the Board. At the start of the February 29 meeting, Board counsel suggested an analytical framework the Board could use to determine whether each allegation was substantially contested. First, the Board would determine if the allegation was within its jurisdiction to resolve. If the allegation was within the Board's jurisdiction, the Board would determine whether the allegation, if true, would be important enough to deny Continental a certificate of confirmation. Finally, if the allega-

tion was found to be material, the Board would determine if it had sufficient facts and argument before it to make a final determination on the issue. If the Board determined that it needed more information on an issue, it would then decide whether or not to convene a contested case hearing.

The Board heard argument from the parties and then proceeded to examine each part of the complaint under the three-part framework suggested by its counsel. On each count, the Board addressed questions to the parties. Board consideration of each allegation continued into the Board's March 9 meeting. The parties were given the opportunity to address closing statements to the Board. The Board discussed the complaint count by count, then voted, deciding unanimously that the matters were not substantially contested.

Nor-West petitioned the Board for reconsideration. The Board considered the petition at its May 11, 1984, meeting. Nor-West representatives argued in favor of the petition; Continental and the City spoke against it. The Board voted to deny the petition and to release to Continental a certificate of confirmation. Nor-West appealed the Board's decision to the Court of Appeals. The Court of Appeals remanded the matter to the Board for initiation of a contested case hearing, finding both that Continental's application for a certificate of confirmation was substantially contested within the meaning of the Board's rules and that the Board, through its three-part test, had improperly promulgated an interpretive rule in violation of MAPA. Continental, the City, and the Board petitioned this court for review of the order of the Court of Appeals.

1. The Minnesota Administrative Procedure Act defines "contested case" as

a proceeding before an agency in which the legal rights, duties or privileges of specific parties are required by law or constitutional right to be determined after an agency hearing.

Minn.Stat. § 14.02, subd. 3 (1982). Respondent Nor-West contends that the Board was required to convene a contested case hearing on this matter because it involves the determination of Continental's legal right to a certificate of confirmation and because the Cable Communications Act requires a hearing before certificates of confirmation are issued. Respondent argues that the Cable Act requires a hearing because it provides that "a certificate may be granted after *full board proceedings* * *." Minn.Stat. § 238.09, subd. 6 (1982) (emphasis added).

Had the legislature intended to require a hearing before the Cable Board issues a certificate of confirmation, it would have explicitly said so. A literal reading of "full board proceedings" shows that the legislature required some proceeding of the full Board before confirmation of a franchise, with the Board permitted discretion to fashion the type of proceeding held. Another part of the statute does utilize the word "hearing" in regard to appeals to the Board by franchised cable companies and municipalities. The statute provides that "the Board at its discretion shall hold a *hearing* upon such appeals * * *." Minn.Stat. § 238.14 (1982) (emphasis added). Since the legislature explicitly provided for a hearing in one part of the Cable Act, its failure in another part of the act to require a "hearing" before the Board issues certificates of confirmation militates against respondent's argument that "full board proceedings" is equivalent to a "hearing."

A reading of section 238.09, subd. 6, in the context of section 238.09 as a whole, also indicates that "full board proceedings" is not intended to trigger a right to a contested case hearing. Minn.Stat. § 238.09 provides separately for Board issuance of certificates of confirmation to cable companies at various stages of construction and operation when the Cable Act was enacted. Section 238.09, subd. 3, provides that a certificate shall issue "without further proceedings" to a franchise in actual operation on May 24, 1973. Section 238.09, subd. 4, provides that a cable company, granted a franchise by April 1, 1973, but not yet in operation, shall receive a certifi-

cate by filing an application and supporting documentation with the Board. Section 238.09, subd. 5, provides that a cable company franchised pursuant to a municipal enabling ordinance on cable communications enacted by April 1, 1973, shall receive a certificate by filing with the Board an application and supporting documentation. Section 238.09, subd. 6, at issue in this case, provides that cable franchises not included in the prior subdivisions may be granted a certificate of confirmation after "full board proceedings." In the context of section 238.09, the Cable Act's requirement that certificates generally issue after "full board proceedings" suggests a contrast with the summary proceedings allowed in transitional cases, not a requirement of a contested case hearing.

■ Respondent's second argument that the Cable Act requires initiation of a contested case hearing is based on language in the act providing that:

The board may promulgate, issue, amend, rescind and provide for the enforcement of such rules and regulations as it may find necessary or appropriate to carry out the provisions of this chapter in accordance with chapter 14. [MAPA] The board may also issue any necessary and appropriate orders.

Minn.Stat. § 238.06, subd. 1 (1982). Respondent interprets this language to mean that any rule adopted by the Board is invalid if it authorizes the Board to carry out its functions other than in accord with MAPA procedures. MAPA provides procedures only for formal contested case adjudications and authorizes agencies to informally dispose of contested cases only when the parties stipulate to an informal process, Minn.Stat. § 14.59 (1982), which respondents declined to do. Since the process used by the Board in this matter failed to comply with the formal MAPA contested case procedures, Minn.Stat. §§ 14.57–14.62 (1982), respondents contend that the Board failed to act "in accordance with" MAPA, as required by the Cable Act.

■ The language of section 238.06, subd. 1, however, is better interpreted as a grant of broad rulemaking power to the Board to allow it to carry out its duties. The sentence speaks directly to rulemaking, mandating that Board rulemaking follow MAPA procedures. Board issuance of orders resolving disputes between specific parties is brought up only in the second sentence of section 238.06, subd. 1. Reliance on section 238.06 as establishing the right to a contested case hearing is also circular. Under respondents' interpretation, section 238.06 requires the Board to act "in accordance with" MAPA. MAPA provides, however, only that "[a]n agency shall initiate a contested case proceeding when one is required by law." Minn.Stat. § 14.57 (1982). In *Independent School Dist. No. 581 v. Mattheis*, 275 Minn. 383, 147 N.W.2d 374 (1966), this court held that since the plaintiff had conceded that the agency's enabling act did not require a hearing, and due process was not denied by the agency's failure to hold a hearing, the contested case procedures of MAPA did not apply. MAPA itself provides no right to a contested case hearing, but only sets forth the procedures to be followed when another statute grants such a right. Respondent thus still lacks a Cable Act provision granting it that right.

In *Waters v. Putnam*, 289 Minn. 165, 183 N.W.2d 545 (1971), this court did find a right to a hearing in language of the Watershed Act providing that "All proceedings before the board shall be in conformity with [MAPA]." *Id.* at 169, 183 N.W.2d at 549 (quoting Minn.Stat. § 112.801, subd. 8 (1970)). *Waters* is distinguishable from the present case for two reasons. First, the statutory command that the water resources board act in conformity with MAPA specifically referred to *all* agency proceedings, while the Cable Act language mandating cable board action "in accordance with" MAPA refers only to rulemaking. Second, the *Waters* court was concerned with whether informal agency action was subject to judicial review, not whether a party had a right to a contested case hearing. MAPA provides judicial review only to one "aggrieved by a final

decision in a contested case." Minn.Stat. § 14.63 (1982). The court more readily finds a right to a hearing for purposes of allowing judicial review under MAPA than for initiation of a contested case hearing because of the presumption in favor of judicial review of agency action. In *MPIRG v. Minnesota Envtl. Quality Council*, 306 Minn. 370, 237 N.W.2d 375 (1975), the court implied a right to a hearing from the public policy of the Minnesota Environmental Policy Act in order to subject the agency to review under MAPA, but simultaneously found the hearing provided the aggrieved party by the agency to be adequate. *Id.* at 380, 237 N.W.2d at 381. The aggrieved party had received only an informal hearing from the agency.

▆▆▆ There is, therefore, no right to a contested case hearing under the Cable Act. A contested case hearing, however, may also be required by the constitution. In order to have a due process right to a hearing, a party must have a liberty or property interest at stake:

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.

*Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Respondent had no property interest at stake in this matter because it had a mere expectation of and desire for a cable franchise, but no legitimate claim of entitlement to a franchise award from St. Paul. Because its initial franchise award from the City was conditioned upon mayoral approval and on agreement with the City on a franchise ordinance, and because those conditions were never fulfilled, respondent also had no contractual property right at stake. In *Minneapolis Cablesystems v. City of Minneapolis*, 299 N.W.2d 121 (Minn.1980), this court held that no valid contract for a cable franchise was entered

into by the city where the city had made clear in its franchise award that the award was contingent upon passage of a franchise ordinance, and that ordinance was not passed. Respondent thus had no constitutional right to a hearing in this case.

▆▆▆ Respondent also had no right to a contested case hearing under Board's administrative rules:

> No later than 60 days after a completed application for a certificate of confirmation is received, the board shall hold a public meeting thereon. * * * If, at any such meeting, application is substantially contested, the board may adjourn the public meeting and deem the matter a contested case * * *.

Minn.Admin.R. 2320.0500 (1983). The rule mandates a public hearing on a franchise confirmation, but leaves the initiation of a contested case hearing within the discretion of the Board.[1] Since neither the Cable Act nor MAPA *requires* the Board to convene a contested case hearing, Rule 2320.-0500 does not invalidly conflict with the Cable Act. This court has squarely held that when a statute does not require a hearing as a matter of law, agency policy is left to the agency to promulgate through rulemaking. *Setty v. Minnesota State College Bd.*, 305 Minn. 495, 497, 235 N.W.2d 594, 595–96 (1975). A rule only providing for discretionary hearings does not entitle a party to a hearing as a matter of right. *Id.* Respondent thus had no right to a contested case hearing in this matter.

2. When the Board convened to consider whether Continental's application for a certificate of confirmation was substantially contested under Rule 2320.0500, Board counsel suggested to the Board a three-part method of analysis to assist them in making that determination:

1. Does the Board have jurisdiction over the issue raised?

---

1. The rule permits the Board discretion to determine whether a matter is substantially contested. The issue of whether the Board could re-

fuse to grant a contested hearing to a party even after determining that a matter is substantially contested is not before us.

2. Is the issue raised material to the Board's decision to grant or deny a certificate of confirmation?

3. Is the record before the Board adequate to allow the Board to resolve the issue?

The Board used this analysis in its issue-by-issue examination of the respondent's complaints. In its findings of fact, conclusions and order regarding this matter, the Board stated that "substantially contested means" the issues raised are within the Board's jurisdiction, they are material to the Board's determination whether to grant or deny the certificate, and the record before the Board is not adequate to resolve the issues. Respondent contends that the Board has unlawfully based its decision on an interpretive rule not promulgated according to the rulemaking procedures of MAPA, Minn.Stat. §§ 14.05–14.38 (1982 & Supp.1983).

The Cable Communications Act requires the Board to promulgate rules in accordance with MAPA. Minn.Stat. § 238.06, subd. 1 (1982). This court has recognized three types of agency rules: legislative, interpretative, and procedural. *McKee v. Likins,* 261 N.W.2d 566, 577 (Minn.1977). Interpretative rules are promulgated to "make specific the law enforced or administered by the agency." *Minnesota-Dakotas Retail Hardware Assoc. v. State,* 279 N.W.2d 360, 364 (Minn.1979). Legislative rules are promulgated "pursuant to delegated powers to make substantive law, and, in contrast to interpretative rules, have the force and effect of law." *Id.* at 365. Regardless of rule type, however, this court has held that *all* rules are subject to the rulemaking requirements of MAPA. *White Bear Lake Care Center, Inc. v. Minnesota Dep't of Pub. Welfare,* 319 N.W.2d 7, 9 (Minn.1982) (rules must be adopted in accordance with MAPA, "and the failure to comply with necessary procedures results in invalidity of the rule"); *Johnson Bros. Wholesale Liquor Co. v. Novak,* 295 N.W.2d 238, 242–43 (Minn.1980) ("Interpretive rules fall within the statutory definition of 'rule,' " and therefore must be promulgated according to MAPA rule-

making procedures); *Minnesota-Dakotas,* 279 N.W.2d at 364 n. 6 (MAPA "does not except interpretative rules from the procedural requirements for adoption of regulations. * * * [A]ll 'rules' * * * are subject to the statutory rulemaking procedures"); *see McKee,* 261 N.W.2d at 578.

■ Because the Board rendered an interpretation of its rule, the question presented is whether the Board's definition of "substantially contested" was a permissible interpretation of its current rule or an improper promulgation of a new rule. Generally, if the agency's interpretation of a rule corresponds with its plain meaning, or if the rule is ambiguous and the agency interpretation is a longstanding one, the agency is not deemed to have promulgated a new rule. *White Bear Lake,* 319 N.W.2d at 8. Since the Board's interpretation of "substantially contested," as set out in its order, has not been used before, it does not represent a longstanding interpretation of the Board's rule.

■ We must next decide whether the Board's interpretation is consistent with the plain meaning of the rule. If an agency interpretation merely restates existing policy, or is consistent with the regulation it implements, the court has upheld the agency action. *Wacha v. Kandiyohi County Welfare Bd.,* 308 Minn. 418, 421, 242 N.W.2d 837, 839 (1976) (public bulletin that restated the requirements of a properly promulgated rule was not a new rule subject to MAPA rulemaking procedures); *Jones v. Minnesota State Board of Health,* 301 Minn. 481, 221 N.W.2d 132 (1974). In *Jones,* the court upheld the health board's interpretation of a regulation requiring "practical plumbing experience" for certification as a master plumber. The court found that the health board's decision that the rules required actual experience physically installing plumbing systems was consistent with the regulation and was therefore not erroneous. *Jones,* 301 Minn. at 483, 221 N.W.2d at 134.

■ Where an agency adopts policy inconsistent with its regulations, without fol-

lowing MAPA procedures, the court invalidates the agency action. In *White Bear Lake*, 319 N.W.2d at 8–9, this court invalidated an agency decision to compute a nursing home's cost change on a per diem basis for the current fiscal year, finding that agency rules required that this computation be made based on figures from the preceding fiscal year. In *Resident v. Noot*, 305 N.W.2d 311 (Minn.1981), this court invalidated an agency policy precluding a nursing home from receiving third-party payments on behalf of a medical assistance recipient, finding that agency rules prohibited nursing homes only from requesting, not from receiving, such aid from third parties. Finally, in *Swenson v. Department of Pub. Welfare*, 329 N.W.2d 320 (Minn.1983), this court invalidated an agency decision to reduce developmental achievement center services for mentally retarded persons from 5 to 3 days per week as contrary to a rule requiring that such services be available 5 days per week.

The Board's interpretation of "substantially contested" is consistent with the Board's rule. First, the rule sets forth a procedure for Board resolution of issues. Agencies are not permitted to act outside the jurisdictional boundaries of their enabling acts. *McKee v. County of Ramsey*, 310 Minn. 192, 195, 245 N.W.2d 460, 462 (1976); *State ex rel. Spurck v. Civil Service Bd.*, 226 Minn. 253, 32 N.W.2d 583 (1948). The Board thus initially determined whether the allegations were within its jurisdiction to decide. Second, the Board determined whether each allegation was *material* to its decision to grant or deny confirmation. The inquiry as to whether an allegation is material comports with the rule's requirement that a contest be substantial. Finally, the Board determined whether it had sufficient evidence to resolve each allegation, or whether more evidence was required before a decision could be made. The terms of the rule make initiation of a contested case hearing discretionary with the Board. The Board's third inquiry was an effort to determine if the Board needed to convene a contested case hearing to resolve any of the allega-

tions. The Board's interpretation of the rule comports with its plain meaning. Thus, under the test set forth in *White Bear Lake*, the Board has not engaged in illegal rulemaking.

3. The court attaches a presumption of correctness to agency decisions and shows deference to an agency's conclusions in the area of its expertise. *Minnesota Power & Light Co. v. Minnesota Pub. Util. Comm'n*, 342 N.W.2d 324, 329 (Minn.1983); *Independent School Dist. No. 277 v. Pautz*, 295 N.W.2d 635, 637 (Minn.1980). When reviewing any agency's determination, the court independently examines the agency's record and decision and need not defer to a lower court's decision on the same matter. *Minnesota Power*, 342 N.W.2d at 329; *Urban Council on Mobility v. Minnesota Dep't of Natural Resources*, 289 N.W.2d 729, 732 (Minn. 1980).

Agency decisions are reversed only when they reflect an error of law, the findings are arbitrary and capricious, or the findings are unsupported by substantial evidence. *Sunstar Foods, Inc. v. Uhlendorf*, 310 N.W.2d 80, 84 (Minn.1981); *Crookston Cattle Co. v. Minnesota Dep't of Natural Resources*, 300 N.W.2d 769, 777 (Minn.1980); *Signal Delivery Service, Inc. v. Brynwood Transfer Co.*, 288 N.W.2d 707, 710 (Minn.1980). The court has endorsed the following definition of "substantial evidence":

1. Such relevant evidence as a reasonable mind might accept as adequate to support a conclusion;

2. More than a scintilla of evidence;

3. More than some evidence;

4. More than any evidence; and

5. Evidence considered in its entirety.

*Reserve Mining Co. v. Herbst*, 256 N.W.2d 808, 825 (Minn.1977); *see Taylor v. Beltrami Elec. Coop., Inc.*, 319 N.W.2d 52, 56 (Minn.1982). The substantial evidence test requires a reviewing court to evaluate the evidence relied upon by the agency in view of the entire record as submitted. *Minne-*

*sota Power,* 342 N.W.2d at 332. If an administrative agency engages in reasoned decisionmaking, the court will affirm, even though it may have reached a different conclusion had it been the factfinder. *First Nat'l Bank v. Department of Commerce,* 350 N.W.2d 363, 368 (Minn.1984); *Reserve Mining,* 256 N.W.2d at 825. The court will intervene, however, where there is a "combination of danger signals which suggest the agency has not taken a 'hard look' at the salient problems" and the decision lacks "articulated standards and reflective findings." *Id.*

■ In this case, the Cable Communications Board had before it an extensive documentary record of the St. Paul cable franchising process. Hundreds of pages of written argument and thousands of pages of supporting documentation were submitted to the Board by all concerned parties. The Board then considered respondent's complaint count by count at three public meetings, deliberating a total of 16 hours on this matter. The Board addressed all issues raised, and made separate findings as to each count of respondent's complaint. We have reviewed the documents and proceedings before the Board and conclude that the Board's finding that this matter was not substantially contested is based on substantial evidence.

■ The Board did not make an error of law in deciding that it had no jurisdiction to determine the constitutional and antitrust issues raised by the respondents. The Cable Communications Act created the Board to oversee the development of cable systems in the state. Minn.Stat. § 238.01 (1982). The Board is authorized to promulgate minimum franchising standards and procedures, and to ensure statewide compliance with them. The Board properly decided that it is not empowered to decide constitutional or antitrust issues.

Finally, the Board's refusal to grant a contested case hearing was not arbitrary or capricious in light of Board precedent in the Minneapolis and Dodge Center cases. Respondent asserts that the Board acknowledged the parties' right to a contest-

ed case hearing in those cases upon mere receipt of a complaint, without the elaborate determination of whether the applications were "substantially contested" that occurred in the St. Paul matter. In the Dodge Center case, however, the parties stipulated to waive their rights to a contested case and the Board resolved that case at a public hearing. *In re Certification of the Franchise Granted by the City of Dodge Center to Dow-Sat of Minnesota, Inc. and the Protest Filed by Tri-Cable, Inc.,* Minnesota Cable Communications Board Findings of Fact, Conclusions, and Order (September 29, 1983.) The Board never determined whether the parties had a right to a contested case hearing because the parties agreed to resolve their dispute in an informal manner.

■ In the Minneapolis case, the Board staff had unresolved questions about the applicant's compliance with minimum franchising standards and recommended that certification be temporarily withheld. The Board held two public meetings on the application to attempt to resolve the problems before any complaints were filed. *Northern Cablevision, supra,* at 18. In this case, on the other hand, Board staff recommended certification of Continental based on its own independent examination of the documentary record prior to receipt of respondent's complaint. After receipt of respondent's complaint, the Board proceeded to determine whether a substantial contest existed in accordance with its rules. Board precedent does not compel initiation of a contested case hearing in this matter. The Board's refusal to convene such a hearing was not arbitrary or capricious.

The order of the Court of Appeals remanding this matter to the Board for initiation of a contested case hearing before a hearing examiner is reversed and the Board order denying respondent a contested case hearing and granting Continental a certificate of confirmation is affirmed. The related matter of the complaint of Ronald Wills to the Cable Board is remanded to

the Court of Appeals for disposition in light of this opinion.

Reversed.

PETERSON, J., took no part in the consideration or decision of this case.