**David ROSS, Respondent,**

v.

**STATE OF MINNESOTA, DEPART-
MENT OF HUMAN SERVICES,
et al., Appellants.**

No. C7–87–620.

Court of Appeals of Minnesota.

Sept. 29, 1987.

Lawrence W. Pry, Legal Aid Society of Minneapolis, Minneapolis, for respondent.

Thomas L. Johnson, Hennepin Co. Atty., Vernon E. Bergstrom, Chief, Appellate Section, Janeen E. Rosas, Asst. Hennepin Co. Atty., Minneapolis, for appellants.

Considered and decided by POPOVICH, C.J., and NORTON and MULALLY *, JJ., with oral argument waived.

## OPINION

NORTON, Judge.

The State of Minnesota, Department of Human Services appeals from a determination by the Hennepin County District Court that respondent David Ross was eligible to receive AFDC assistance during the month of October 1984. We affirm.

## FACTS

This case is concerned with the federal Aid to Families with Dependent Children (AFDC) program. From October 1981 to October 31, 1984, respondent David Ross' income consisted of funds obtained through Minnesota's AFDC–Unemployed Parents (AFDC–UP) program. On November 1, 1984, Ross' AFDC–UP grant was terminated, due to his alleged employment for over 100 hours during the month of October 1984. Ross received a notice of overpayment, requesting him to repay the $758 which he had received for the month of October 1984.

Ross appealed the overpayment notice, claiming that while the job he had obtained required him to be present at the worksite for over 100 hours in the month of October, he had actually worked only 52.4 hours that month.

Ross had begun working in September 1984 at D & S Service as a mechanic during the evening shift, from 3:30 p.m. to 10:00 p.m. Monday through Friday. As a condition of his employment, Ross was expected to be physically present on the premises

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

during that shift, for a total of 32.5 hours per week. Thus, he was available for work and physically present on the job site for more than 100 hours in the month of October.

According to the terms of Ross' employment, however, he was paid $13.50 per hour only for those hours he performed work which resulted in payment by a customer. He was paid $706.55 for the hours he actually worked in October. That amount, when divided by $13.50, indicates that Ross received payment for no more than 52.4 hours worked in October 1984.

Following a hearing, the Commissioner of Human Services determined that because Ross was expected to be at his work site during specifically defined hours, he was actually "employed" during those hours, notwithstanding the fact that he received payment only for the hours which he performed repairs. The Commissioner reasoned that Ross' situation was similar to one where a salesman is paid on a commission basis only; even though the salesman may talk to many people during the day, a sale is not always made. The Commissioner also emphasized the fact that Ross was expected to work a shift of six and one-half hours, and probably would have been dismissed if he had failed to report during those hours.

Ross appealed to the district court, which reversed the Commissioner's decision, concluding that although Ross was available for work for more than 100 hours during the month of October, he was actually "employed," within the meaning of 45 C.F.R. § 233.100(a)(1) and Minn.R. § 9500.0080, subpt. 1, for only 52.4 hours during that month. The Department of Human Services has appealed this determination, and Ross seeks to affirm, raising equal protection arguments.

### ISSUE

Was Ross "employed" in excess of 100 hours in October 1984?

### ANALYSIS

The AFDC program authorizes appropriations to participating states for the purpose of aiding needy dependent children who have been deprived of parental support or care. The program was enacted:

> For the purpose of encouraging the care of dependent children in their own homes or in the homes of relatives by enabling each State to furnish financial assistance and rehabilitation and other services, as far as practicable under the conditions in such State, to needy dependent children and the parents or relatives with whom they are living to help maintain and strengthen family life and to help such parents or relatives to attain or retain capability for the maximum self-support and personal independence consistent with the maintenance of continuing parental care and protection * * *.

42 U.S.C.A. § 601 (West 1986).

"Need" and "dependency" are prerequisites for eligibility under the AFDC program. The individual states are given broad discretion within certain guidelines to set their own standards of need, as well as the level of benefits to be paid under the state programs. *King v. Smith*, 392 U.S. 309, 318, 88 S.Ct. 2128, 2133–34, 20 L.Ed.2d 1118 (1968). However, the federal act specifically defines which children are "dependent" for purposes of AFDC eligibility:

> (a) The term "dependent child" means a needy child (1) who has been deprived of parental support or care by reason of the death, continued absence from the home (other than absence occasioned solely by reason of the performance of active duty in the uniformed services of the United States), or physical or mental incapacity of a parent, and who is living with his father, mother, grandfather, grandmother, brother, sister, stepfather, stepmother, stepbrother, stepsister, uncle, aunt, first cousin, nephew, or niece, in a place of residence maintained by one or more of such relatives as his or their own home, and (2) who is (A) under the age of eighteen, or (B) at the option of the State, under the age of nineteen and a full-time student in a secondary school (or in the equivalent level of vocational or technical training) if, before he attains age nineteen, he may reasonably be ex-

pected to complete the program of such secondary school (or such training); * *

42 U.S.C.A. § 606(a).

In 1961, Congress added section 607 to this act, which broadened the definition of "dependent child" to include children deprived of parental support or care by reason of the unemployment of a parent. Pub.L. No. 87–31, 75 Stat. 75 (1961). This section originally authorized the states to define what constituted "unemployment"; however, in 1968, Congress removed such authority from the states. Pub.L. No. 90–248, 81 Stat. 882 (1968) (codified at 42 U.S.C.A. § 607 (West 1986)). The law now provides:

> The term "dependent child" shall, notwithstanding section 606(a) of this title, include a needy child who meets the requirements of section 606(a)(2) of this title, who has been deprived of parental support or care *by reason of the unemployment (as determined in accordance with standards prescribed by the Secretary)* of the parent who is the principle earner, and who is living with any of the relatives specified in section 606(a)(1) of this title in a place of residence maintained by one or more of such relatives as his (or their) own home.

42 U.S.C.A. § 607 (West 1986). (emphasis supplied). In accordance with the above authority, the Secretary of Health, Education and Welfare promulgated regulations providing that the definition of an unemployed father within any state-administered AFDC plan must include any father who is "employed less than 100 hours a month." 45 C.F.R. § 233.100(a)(1)(i). The Minnesota AFDC plan is codified at Minn. Stat. §§ 256.72—87 (1986).

The Minnesota statute defining dependency parallels the federal statute:

> "Dependent child" * * * means a child under the age of 18 years, or a child under the age of 19 years who is regularly attending as a full-time student, and is expected to complete before reaching age 19, a high school or a secondary level course of vocational or technical training

designed to fit students for gainful employment, who is found to be deprived of parental support or care by reason of the death, continued absence from the home, physical or mental incapacity of a parent, *or who is a child of an unemployed parent as that term is defined by the commissioner of human services, such definition to be consistent with and not to exceed minimum standards established by the Congress of the United States and the secretary of health and human services,* and whose relatives, liable under the law for the child's support are not able to provide adequate care and support of the child, and who is living with a father, mother, grandfather, grandmother, brother, sister, stepfather, stepmother, stepbrother, stepsister, uncle, aunt, first cousin, nephew, or niece in a place of residence maintained by one or more of these residences as a home. * *

Minn.Stat. § 256.12, subd. 14 (emphasis added). The commissioner of human services has defined "unemployed parent" in accordance with the above statute:

> An "unemployed father" [1] is a father:
>
>   *   *   *   *   *   *
>
> (C) who works less than 100 hours per month.
>
>   *   *   *   *   *   *

Minn.R. 9500.0080, subpt. 1, (1985) (current version at Minn.R. 9500.2300, subpt. C. (1987)).

Minn.R. pt. 9500.0080 defines an "unemployed parent" as one who "works" less than 100 hours a. month, rather than one who is "employed" less than 100 hours a month—the term which is used in 45 C.F.R. § 233.100(1)(i). Thus, the Commissioner of Human Services either viewed "employment" and "works" as synonymous, or intended to distinguish the two terms and allow a Minnesota AFDC–UP recipient to be "employed" in excess of 100 hours a month if that recipient only performed services for less than 100 hours.

The Minnesota Legislature clearly mandated that the definition of "unemploy-

---

**1.** The use of the term "father," instead of "parent," was struck down as unconstitutional in *Califano v. Westcott*, 443 U.S. 76, 99 S.Ct. 2655, 61 L.Ed.2d 382 (1979).

ment" promulgated by the Commissioner "be consistent with and not * * * exceed minimum standards established by the Congress of the United States and the secretary of health and human services * * *." Minn.Stat. § 256.12, subd. 14. This language indicates that the Legislature did not intend Minnesota's definition of "unemployment" to be broader than the federal definition. We therefore conclude that the Commissioner's use of the term "works" should be construed as synonymous with the term "employed" as used in the Code of Federal Regulations.

In *Board of Health, Town of Lake, Roseau County v. Village of Warroad,* 272 Minn. 509, 139 N.W.2d 255, 256 (1965), the Minnesota Supreme Court approved Webster's definition of "employment" as "work (as customary trade, craft, service or vocation) in which one's labor or services are paid for by an employer." This strengthens our conclusion that "employed" and "works" should be considered synonymous. We also note the Iowa case of *Oberschachtsiek v. Iowa Department of Social Services,* 298 N.W.2d 302 (Iowa 1980), where the court stated:

> The [federal] regulation treats employment as synonymous with work. It requires the definition to include a father who exceeds the standard "if his *work* is intermittent" and the other requirements of subparagraph ii of the regulation are met. (emphasis supplied). The Supreme Court has equated employment with work in interpreting the regulation. *See Batterton [v. Francis],* 432 U.S. [416] at 421, 97 S.Ct. [2399] at 2403, 53 L.Ed.2d [448] at 454 [(1977)] ("Generally, it requires the States to consider a person to be unemployed for AFDC–UF purposes if he works less than 100 hours a month . . .").[2]

*Id.* at 306.

While we conclude that the term "works" is synonymous with the term "employed," nevertheless, the term "employed" is not defined in the Code of Federal Regulations, nor is the term "works" defined in the Minnesota AFDC statutes or rules.

The Commissioner determined that Ross was working during his entire shift, even though he was only paid for the hours he performed repairs. The district court reversed this determination, holding that Ross was only "working" during the hours he actually performed services.

This court must independently examine the record, the law, and the Commissioner's decision, and need not defer to the district court's decision. *Cable Communications Board v. Nor-West Cable Communications Partnership,* 356 N.W.2d 658, 668 (Minn.1984). The Commissioner's decision should be reversed only if it reflects an error of law, if the Commissioner's findings are arbitrary and capricious, or if the findings are unsupported by substantial evidence. *Id.* Legal questions may be determined by this court *de novo.* *See Frost-Benco Electric Association v. Minnesota Public Utilities Commission,* 358 N.W.2d 639, 642 (Minn.1984).

Here, the facts of Ross' employment are not disputed. The parties have stipulated that although Ross was required to be at his employer's place of business for over 100 hours per month, in October 1984 he was only paid for 52.4 hours. Thus, whether Ross "worked" during the hours he was not paid is solely a question of law, turning upon the definition of "employed" as used with 45 C.F.R. § 233.100 and "works" as used in Minn.R. pt. 9500.0080.

In the *Oberschachtsiek* case, a claimant for Iowa's AFDC–UF was denied benefits because he was self-employed over 100 hours per month during the month in question, even though he had actually worked only 32.75 hours that month. *Oberschachtsiek,* 298 N.W.2d 302. The Iowa statute provided that, for AFDC–UF purposes, a self-employed person should be deemed employed "for the number of hours such person's services are available," regardless of the number of hours he actually performed services. *Id.* at 304. The Iowa Supreme Court struck down the statute, stating:

> If plaintiff were not self-employed, he would have been eligible for benefits

---

2. The Supreme Court quote refers to AFDC–"Unemployed Father."

even though he was available for work one hundred hours or more. Thus if he were totally unemployed or if he were employed by someone else but actually worked less than one hundred hours, he would have received benefits. However, he was denied benefits because he could have worked for one hundred hours or more per month in his self-employment if sufficient demand had existed for his services.

*Id.* The court concluded that the statute conflicted with the meaning of "employed" as used in the federal regulation, 45 C.F.R. § 233.100(1)(i):

> We conclude that the federal standard requires state definitions of unemployment to include any father who actually works less than one hundred hours per month during the relevant period. The standard does not permit states to deny eligibility to self-employed persons on the basis of their "availability" to work a greater number of hours.

> \*   \*   \*   \*   \*   \*

> As a practical matter, the regulation makes it impossible for an able-bodied self-employed person ever to qualify for benefits. It puts such a person in a real catch–22 situation. This is because section 239.2(4)(c), The Code, bars benefits for a child of an unemployed father if at any time within the thirty-day period prior to receipt of AFDC benefits the father *"has not been available for employment,* has not actively sought employment, or has without good cause refused any bona fide offer of employment"* (emphasis supplied). Thus benefits are barred under the statute unless the father is always available for employment. Yet they are barred under the regulation if he is available for employment for 100 hours or more.

> Section 42.6 is in conflict with the coverage mandated by the federal standard and violates the applicable federal regulations by excluding persons on an unreasonable, inequitable and unauthorized basis. Consequently, we hold that section 42.6 conflicts with federal eligibility requirements and is therefore invalid.

*Id.* at 306.

Under this analysis, Ross is similarly in a "catch–22 type" situation. Benefits would be denied if he did not remain "available" for employment; thus, he could not turn down employment from D & S. Yet, if the term "works" is interpreted as including "availability" for work during the time Ross is at D & S but not performing services, benefits would also be denied because he is deemed to be working in excess of 100 hours per month. Either way, a person in Ross' situation loses. As the trial court stated:

> These [federal regulations] demonstrate that Congress designed the AFDC–UP program to encourage recipients to find jobs. It would be inconsistent to interpret the regulations in a manner which penalizes a recipient for making him or herself available for work even though neither work nor pay is assured. When the Appellant, Mr. Ross, agreed to the terms offered by the employer he could not have known how much work there would be during the evening shift. Yet he agreed to make himself available for six and one-half hours each day, in spite of the chance that he would get little or no work. To deny Mr. Ross benefits because he was willing to make himself available for work at nearly a full-time work schedule, though he actually worked and was paid for only ⅓ of that time, not only penalizes his initiative, but contradicts AFDC–UP's clear purpose of encouraging recipients to find jobs.

We find this reasoning persuasive, and in conformance with our legislature's intent, as evidenced by the following language:

> Sections 256.72 to 256.87 [the AFDC statutes] shall be liberally construed with a view to accomplishing their purpose, which is to enable the state and its several counties to cooperate with responsible primary caretakers of children in rearing future citizens, when the cooperation is necessary on account of relatively permanent conditions, in order to keep the fam-

ily together in the same household, reasonably safeguard the health of the children's primary caretaker and secure personal care and training to the children during their tender years. Minn.Stat. § 256.85. We therefore conclude that Ross was actually "employed" for only 52.4 hours during the month of October, 1984, even though he was available to work more than 100 hours. Ross is thus entitled to retain the AFDC–UP benefits he received for that month.

In view of our conclusion, we need not address Ross' equal protection arguments.

## DECISION

The district court correctly determined that Ross was eligible to receive AFDC–UP assistance during the month of October 1984.

Affirmed.