*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1924**

In the Matter of the Denial of the
Child Foster Care License Application of
Jennifer Gaffaney and Kenneth Hoffman

**Filed June 29, 2015
Affirmed
Worke, Judge**

Minnesota Department of Human Services
File No. 48-1800-30937

Michael L. Jorgenson, Charlson & Jorgenson, P.A., Thief River Falls, Minnesota (for relators Jennifer Gaffaney and Kenneth Hoffman)

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Alan G. Rogalla, Pennington County Attorney, Stephen R. Moeller, Assistant County Attorney, Thief River Falls, Minnesota (for respondent Minnesota Commissioner of Human Services)

Considered and decided by Worke, Presiding Judge; Hudson, Judge; and Smith, Judge.

**U N P U B L I S H E D   O P I N I O N**

**WORKE**, Judge

Relators challenge the denial of their application for a foster-care license by respondent commissioner of human services, arguing that the commissioner's decision is not supported by substantial evidence and is arbitrary and capricious. We affirm.

# FACTS

In November 2011, D.R., the mother of three young daughters, asked relator Jennifer Gaffaney[1] for help caring for her children because she had lost her job and home. At that time the children were residing with their paternal grandparents, who were no longer able or willing to care for them. Gaffaney brought D.R.'s two older children to live with her, her five children, and her long-term partner, relator Kenneth Hoffman.[2] After social services learned that D.R.'s children were not residing with her, an emergency protective care hearing was held and D.R.'s children were removed from relators' home and placed in foster care. On the day of removal, relators were not present and D.R.'s great-uncle was caring for the children. The social workers noted in their report that the children were "extremely dirty," had matted hair, and looked "tired or drugged." The children were taken to urgent care where they were cleared medically. The attending doctor observed two red marks on the back of one of the children, but could not determine their origin. Gaffaney claimed that the marks were not present when the child was last in her care.

In January 2012, relators applied for a foster-care license to provide care for D.R.'s three daughters. Later that year, Hoffman's brother, sister-in-law, and their three children, cousins to Gaffaney's children, moved in with relators for several months. In March 2013, Gaffaney's 10-year-old daughter, M.R., asked her school nurse if it was "normal for cousins to do it." Upon questioning, M.R. disclosed sexual contact between

---

[1] Although both parties refer to relators as "appellants," because this is an administrative agency appeal, the appealing parties are properly termed "relators."

[2] D.R.'s youngest daughter was taken in by another individual.

2

herself and her male cousin while playing truth or dare, and claimed that relators observed this contact. M.R.'s female cousin stated that she observed the sexual contact and informed relators, who then took the male cousin downstairs. M.R.'s school nurse and principal admitted that M.R. has "told a lot of stories." Child protection and law enforcement closed the case because M.R.'s statements could not be corroborated. M.R. was subsequently diagnosed with Asperger's syndrome and mood disorder, and her psychologist noted that M.R.'s reporting tended "to suggest that [she] was not making the story up."

Relators' initial caseworker had already completed home visits and "was just waiting on some of the things to be fixed in the home" when she left her position and a new child-foster-care licensor was assigned to relators' application. The new licensor contacted the department of human services (DHS) for advice because she was concerned about D.R.'s children being "extremely dirty" when removed from relators' home, D.R.'s children not being taken to the hospital by relators, and the reports of inappropriate sexual contact and Gaffaney's belief that M.R. made up the story. The licensor sent a denial letter to the commissioner after the consultation with DHS. On August 6, 2013, DHS denied relators' application for a child-foster-care license because they "failed to demonstrate their ability to ensure the safety of, or meet the basic needs of, children in their care" and because "denial was necessary to protect the health and safety of children receiving services in DHS-licensed programs." Relators timely appealed the license denial, and after a hearing an administrative law judge (ALJ) recommended that relators'

license application be denied.[3]  The commissioner ultimately affirmed the license denial, making only minor changes to the ALJ's findings.  Relators requested reconsideration, which the commissioner granted.  In October 2014, the commissioner reaffirmed the denial of the foster-care license.  This certiorari appeal followed.

## D E C I S I O N

Relators first argue that the commissioner's decision is not supported by substantial evidence.  We may reverse or modify an administrative agency's decision where it is "unsupported by substantial evidence in view of the entire record." *In re Excess Surplus Status of Blue Cross & Blue Shield of Minn.*, 624 N.W.2d 264, 277 (Minn. 2001); Minn. Stat. § 14.699(e) (2014).  Substantial evidence exists when there is:

> (1) such relevant evidence as a reasonable mind might accept
>     as adequate to support a conclusion;
> (2) more than a scintilla of evidence;
> (3) more than some evidence; [or]
> (4) more than any evidence[.]

*Cannon v. Minneapolis Police Dep't*, 783 N.W.2d 182, 189 (Minn. App. 2010).  We will affirm an agency's decision if the agency engaged in reasoned decision making, even though we may have reached a different result had we been the factfinder.  *Cable Commc'ns Bd. v. Nor-West Cable Commc'ns P'ship*, 356 N.W.2d 658, 669 (Minn. 1984).

A foster-care provider must be licensed and provide basic services to the child. Minn. Stat. § 245A.03, subd. 1(2) (2014), Minn. R. 2960.3080, subp. 5A (2013).  Basic services are "food, shelter, clothing, medical and dental care, personal cleanliness, privacy, spiritual and religious practice, safety, and adult supervision."  Minn. R.

---

[3] Prior to this order, D.R. voluntarily terminated her parental rights.

2960.3010, subp. 5 (2013). A foster-care-license applicant must also "demonstrate the ability to . . . . nurture children, be mature . . . and meet the needs of foster children in the applicant's care." Minn. R. 2930.3060, subp. 4J (2013). The commissioner shall deny a license application:

> if the applicant fails to fully comply with laws or rules governing the program or fails to cooperate with a placing or licensing agency. Failure to fully comply shall be indicated by:
> A. documentation of specific foster home deficiencies that may endanger the health or safety of children;
> B. failure to be approved by fire, building, zoning, or health officials;
> . . . .
> D. any other evidence that the applicant is not in compliance with applicable laws or rules governing the program.

Minn. R. 2960.3020, subp. 11 (2013). The applicant who is denied a license "bears the burden of proof to demonstrate by a preponderance of the evidence that [he or she has] complied fully with this chapter and other applicable law or rule and that the application should be approved and a license granted." Minn. Stat. § 245A.08, subd. 3(b) (2014). Here, the ALJ found that relators did not meet their burden and recommended that their license application denial be affirmed by the commissioner, noting that the evidence raised "serious concerns about whether the [relators] can meet the basic needs of additional children in their care" because M.R. has special needs, D.R.'s daughters were "extremely dirty" when removed from relators' care, and there were allegations of inappropriate sexual contact between relators' child and another child living in relators' home.[4]

---

[4] Relators assert that the ALJ erred by reasoning that the 10-year-old's Asperger's disorder raised additional concerns for relators' ability to care for the three girls. But after relators took exception to this finding, the commissioner stated in its order for

Relators claim that when D.R.'s daughters were removed from their home they had just finished lunch and were dirty because of typical young children's eating habits. But this is inconsistent with the documentation. A worker is unlikely to describe children as "extremely dirty" with matted hair from normal lunchtime activities. This description, along with the allegation that the daughters appeared tired or even drugged, provides evidence relators were not meeting D.R.'s daughters' basic needs. *See* Minn. R. 2960.3010, subp. 5. While there was testimony that relators are good parents who take excellent care of Gaffaney's five children, this does not undermine the findings that there were significant safety concerns regarding D.R.'s daughters. While relators correctly assert that the cause of the red marks on one daughter's back was not determined, there was enough concern about the daughters' states that they were taken to urgent care after they were removed from relators' home.[5]

Relators next claim that the findings regarding the inappropriate sexual contact are not supported by substantial evidence because M.R. "had a history of telling false stories" and because child protection and law enforcement "could not corroborate the story and closed their files." But the allegations were corroborated: M.R.'s female cousin reported that she observed M.R. and her male cousin together in a top bunk without underwear on and the male cousin admitted that he slept in the same room as the 10-year-old. While there may not

reconsideration that "[n]o presumption was made by the [c]ommissioner that [Gaffaney] lacks the ability to provide for the basic needs of children . . . simply on the basis of [M.R.'s] diagnosis." Therefore we need not address this claim.

[5] We acknowledge that D.R.'s daughters were not removed from relators' care because of safety concerns but because social services was notified the daughters were not residing with their biological mother. The children were removed because relators were not licensed-foster-care providers and were not blood relatives of the children.

have been sufficient corroboration for law enforcement or child protection to take further action, there was substantial evidence on which the commissioner based its decision.

While relators dispute the characterization and interpretation of the evidence in this matter, we grant great deference to the agency. *Cable Commc'ns Bd.*, 356 N.W.2d at 668. The agency affirmed the license application denial based upon specific concerns raised by the testimony and evidence submitted. We therefore conclude that the agency's decision is supported by substantial evidence.

Relators next argue that the commissioner's decision was arbitrary and capricious. An agency's decision is not arbitrary and capricious so long as there is a rational connection between the facts found and the decision. *In re Review of 2005 Annual Automatic Adjustment of Charges*, 768 N.W.2d 112, 120 (Minn. 2009). A decision is arbitrary and capricious if it represents an agency's will, rather than its judgment. *In re Excess Surplus Status of Blue Cross & Blue Shield*, 624 N.W.2d at 278. Here, the commissioner denied the license application based on substantial evidence of safety concerns for D.R.'s daughters while in relators' care. Thus, there was a rational connection between the facts found and the decision.

**Affirmed.**