**In re APPEAL OF Jonnie Sue STALEY.**

No. A06–894.

Court of Appeals of Minnesota.

April 24, 2007.

James T. Hanvik, Bassford & Hanvik Law Firm, P.A., Minneapolis, MN, for appellant Staley.

Lori Swanson, Attorney General, Kristen M. Olsen, Assistant Attorney General, St. Paul, MN, for respondent Minnesota Department of Health.

Considered and decided by KLAPHAKE, Presiding Judge; SHUMAKER, Judge; and COLLINS, Judge.

## OPINION

COLLINS, Judge.*

This is an appeal from a district-court judgment affirming the final order of the

___

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by

Minnesota Commissioner of Health, which concluded that appellant abused a vulnerable adult, in violation of Minn.Stat. § 626.5572, subd. 2(b) (2006). We agree with the district court that the commissioner's decision was supported by substantial evidence, was not arbitrary and capricious, and was not reached in violation of appellant's right to procedural due process. But because we conclude that the commissioner's decision is based on an error of law, we reverse.

## FACTS

Appellant Jonnie Sue Staley started working for Trevilla of New Brighton, a nursing facility, as a nursing assistant in 1997. This dispute involves appellant's interaction with a Trevilla resident, R.J., who qualified as a vulnerable adult under Minn.Stat. § 626.5572, subd. 21 (2000). R.J. was diagnosed with Korsakoff's Psychosis, dementia, depression, and adjustment disorder in 2001. These conditions affected R.J.'s short-term and long-term memory. R.J. required assistance using the toilet and often became agitated and anxious when nursing assistants performed personal-care services for him.

On April 11, 2002, appellant allegedly orally abused R.J. At midmorning that day, while her co-workers were on breaks, appellant was left alone to staff one of the units of Trevilla. When R.J. needed assistance in the bathroom, appellant was upset that she was the only nursing assistant on the floor. While assisting R.J., appellant reportedly yelled, "I forgot to put my [f-cking] gloves on and it's your fault, now you're going to [sh-t] all over my hands, you dumb [f-cker]." Within a few minutes, R.J.'s roommate, R.L., reported the incident to a nurse. R.L. was lying on his bed reading when the incident occurred. A curtain dividing the room prevented R.L.

from seeing the bathroom, but the door to the bathroom was partially open, and R.L. could clearly hear what was said. R.L. also claimed that he heard a slapping sound and reported to the nurse that appellant slapped R.J. No one else is known to have overheard the incident.

R.J. was interviewed on the same day and replied that "no one was mean to him and no one slapped him." There were no signs of injury to R.J. But according to the nurse who interviewed R.J., he was very confused and did not remember bowel movements during the day even though he had had two. The nurse and Department of Health investigator attributed R.J.'s conflicting memory of the incident to his dementia. Appellant was terminated for oral abuse the following day.

The Minnesota Department of Health conducted an investigation of the reported abuse as required by federal regulations and Minnesota's Vulnerable Adults Act, Minn.Stat. § 626.557 (2006). A special investigator, who is also a registered nurse, examined relevant medical records and Trevilla's documentation of the incident. The investigator also personally interviewed R.J. and R.L., as well as appellant and others of Tevilla's staff. The investigator concluded: "The preponderance of [the] evidence indicates verbal and mental abuse did occur in connection with the [appellant] using a loud voice to call resident [R.J.] a 'dumb [f-er]' at approximately 10:45 a.m., on 4/11/02." But the investigator also reported that the evidence "did not conclusively establish that [appellant] slapped [R.J.]" The department submitted its finding of abuse to the Nursing Assistant Registry and the Minnesota Department of Human Services. Under federal law, this finding renders appellant ineligible for employment in a nursing facility.

appointment pursuant to Minn. Const. art. VI, § 10.

Appellant's request for reconsideration of the department's finding of abuse was denied. Appellant then requested a fair hearing to appeal the department's decision, and on December 10, 2004, a hearing was held before an agency referee. Both R.J. and R.L. died prior to the date of the hearing. Following the hearing, the referee concluded: "[T]here is not a preponderance of the evidence that the appellant verbally abused the vulnerable adult." The referee recommended reversal of the department's determination of vulnerable-adult abuse.

But the Minnesota Commissioner of Health did not adopt the referee's recommendation. Instead, the commissioner credited R.L.'s statement, determined that vulnerable-adult abuse was proved by a preponderance of the evidence, and concluded that the department's initial determination should be affirmed. Appellant then appealed the decision to the Ramsey County District Court, which affirmed the commissioner's determination. This appeal follows.

## ISSUES

I. Is the commissioner's decision supported by substantial evidence?

II. Was the commissioner's decision arbitrary and capricious?

III. Was appellant deprived of procedural due process?

IV. Does the commissioner's determination violate public policy?

V. Is the commissioner's decision affected by an error of law?

## ANALYSIS

 Minn.Stat. § 256.045 (2006) authorizes judicial review for a party aggrieved by an order of the Commissioner of Health. After review by the district court, we review the commissioner's decision independently, giving no deference to the district court's decision and being governed by the standards prescribed in the Minnesota Administrative Procedure Act (APA). *Zahler v. Minn. Dep't of Human Servs.*, 624 N.W.2d 297, 300–01 (Minn.App. 2001), *review denied* (Minn. June 19, 2001). The APA provides:

> In a judicial review under sections 14.63 to 14.68, the court may affirm the decision of the agency or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the administrative finding, inferences, conclusion, or decisions are:
>
> (a) in violation of constitutional provisions; or
>
> (b) in excess of the statutory authority or jurisdiction of the agency; or
>
> (c) made upon unlawful procedure; or
>
> (d) affected by other error of law; or
>
> (e) unsupported by substantial evidence in view of the entire record as submitted; or
>
> (f) arbitrary and capricious.

Minn.Stat. § 14.69 (2006). Agency decisions "enjoy a presumption of correctness." *Reserve Mining Co. v. Herbst*, 256 N.W.2d 808, 824 (Minn.1977). Upon review, a court must exercise judicial restraint, lest it substitute its judgment for that of the agency. *In re Excess Surplus Status of Blue Cross & Blue Shield of Minn.*, 624 N.W.2d 264, 277 (Minn.2001).

Ordinarily, our construction of a statute that resolves an issue on appeal does not necessitate addressing other issues presented. However, before reaching the dispositive issue in this case, we choose to address appellant's other arguments.

## I.

The first issue is whether the commissioner's decision is supported by substantial evidence in view of the entire record. The definition of "substantial evidence" is elusive; Minnesota courts have employed several formulations. In its oft-cited formulation, our supreme court defined "substantial evidence" as: "(1) such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; (2) more than a scintilla of evidence; (3) more than some evidence; (4) more than any evidence; or (5) the evidence considered in its entirety." *Minn. Ctr. for Envtl. Advocacy v. Minn. Pollution Control Agency*, 644 N.W.2d 457, 464 (Minn.2002). "If an administrative agency engages in reasoned decision-making, the court will affirm, even though it may have reached a different conclusion had it been the factfinder." *Cable Commc'ns Bd. v. Nor-West Cable Communications P'ship*, 356 N.W.2d 658, 669 (Minn.1984).

The question here is whether there is substantial evidence to support the commissioner's finding that appellant actually said to R.J.: "I forgot to put my [f-cking] gloves on and it's your fault, now you're going to [sh-t] all over my hands, you dumb [f-cker]." Appellant contends that more than R.L.'s uncorroborated statement is needed to find substantial evidence to support the commissioner's decision. We disagree.

R.J.'s roommate, R.L., reported appellant's outburst within minutes after appellant assisted R.J. in the bathroom. What R.L. heard appellant say was documented the day of the incident, while the statement was fresh in R.L.'s memory. Medical records and interviews with a number of Trevilla employees who had personal and regular experience interacting with R.L. indicated that he was "ori-

ented, reliable, and [did] not have a history of making false allegations." R.L. was in close enough proximity to overhear appellant's speech. Because R.J. was not competent to recall the event due to his memory impairment, R.L. was the only person to relate the incident. The commissioner found that R.L. had no reason to fabricate an allegation of abuse and did not credit appellant's evidence offered to establish such a motive. "We defer to an agency's conclusions regarding conflicts in testimony . . . ." *Blue Cross & Blue Shield*, 624 N.W.2d at 278.

Furthermore, the record contains evidence of appellant's propensity for swearing, including a Trevilla disciplinary measure signed by appellant and documented interviews with Trevilla employees. At the evidentiary hearing, appellant conceded her regular use of swear words while on the job. The record shows that appellant was previously warned for directing offensive language toward a resident (not R.J.). Appellant was also disciplined numerous times for disrespecting her supervisor. Although not conclusive, appellant's documented history of swearing, insubordination, and offensive language enhances the likelihood that appellant made the statement to R.J. as reported.

Finally, a comparison of R.L.'s two interviews, conducted one month apart, supports the commissioner's finding. R.L.'s depictions of the incident were substantially similar. In the first interview, R.L. reported the statement as quoted above and relied on by the commissioner. In the second interview, R.L. said that appellant swore because she forgot to put her gloves on and stated something like "If I get [sh-t] on my bare hands, I'll wipe my hands back on you." R.L. added that appellant called R.J. a "dumb [f-cker]." As in the first interview, R.L. said that he heard a

slap but that R.J. did not yell or scream out in response.

The record indicates that R.L. was reliable: He was physically and mentally competent to hear the statement and without motive to fabricate; his observation was reported and recorded promptly after appellant assisted R.J. in the bathroom; and the report he gave to investigators one month later was substantially similar to his initial report. Based on the record as a whole, we conclude that the commissioner's decision regarding the facts of the incident is supported by substantial evidence.

## II.

██ Appellant contends that the commissioner's decision was arbitrary and capricious. An administrative decision is arbitrary and capricious if:

the agency relied on factors which the legislature had not intended it to consider, if it entirely failed to consider an important aspect of the problem, if it offered an explanation for the decision that runs counter to the evidence, or if the decision is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Trout Unlimited, Inc. v. Minn. Dep't of Agric.*, 528 N.W.2d 903, 907 (Minn.App. 1995), *review denied* (Minn. Apr. 27, 1995). A decision is considered arbitrary and capricious if the decision "represents the agency's will, rather than its judgment." *Id.* (quotation omitted).

Here, appellant does not show that the agency considered factors that it should not have considered, that the agency entirely failed to consider an important part of the dispute, that the agency's decision is inconsistent with the evidence, or that the decision is implausible and unattributable to the agency's discretion. Appellant's assertion that the commissioner's decision is arbitrary and capricious is without merit. Contrary to appellant's assertion, the commissioner's decision is clearly attributable to her reasonable evaluation of the evidence, albeit negated by an error of law.

Appellant's principal assertion is that "respondent expects a rubber stamp of its initial findings when it finds that maltreatment occurs, and in turn will rubber stamp the referee's findings if they concur with its initial determinations." But appellant fails to support her sweeping claim. In fact, the record demonstrates that the commissioner independently reviewed the referee's recommendation and issued a reasoned memorandum. The commissioner's memorandum thoroughly explained her disagreement with the referee's determination. Appellant's claim that the commissioner simply rubber stamps findings of abuse is unfounded.

██ Finally, appellant contends that the commissioner's decision was arbitrary and capricious because the order "adopted verbatim the suggested modification of the referee's order put forth by [respondent]...." Adopting "a party's proposed findings and conclusions of law is not reversible error per se." *Bliss v. Bliss,* 493 N.W.2d 583, 590 (Minn.App.1992), *review denied* (Minn. Feb. 12, 1993). While a commissioner's verbatim adoption of a party's proposed findings or conclusions raises questions regarding whether the commissioner independently evaluated the evidence, there is no error if the commissioner's findings and conclusions are "specific and sufficient enough to enable meaningful review." *See id.*

Here, a comparison of the commissioner's final order with respondent's submitted exceptions to the referee's recommended order indicates that the commissioner adopted significant portions of respondent's proposed findings

and conclusions. But the commissioner's final order does not incorporate respondent's submitted findings in every respect. Moreover, the commissioner's accompanying memorandum meticulously analyzed the referee's recommendation and explained the commissioner's reasons for departing from the referee's recommendation. The detail of the commissioner's accompanying memorandum provides assurance that her decision was made after meaningful review and that the decision is the product of her independent judgment. We conclude that the commissioner's decision was not arbitrary and capricious.

### III.

▆▆▆▆ We next address appellant's argument that the commissioner's decision violates her right to procedural due process. According to appellant, "respondent's power to dismiss out of hand an impartial and informed referee's well-reasoned and thorough findings and conclusions of law effectively denies appellant a 'meaningful opportunity to present [her] case.'"

But appellant cites no law to the effect that the commissioner is obligated to adopt, or defer to, the referee's findings and conclusions. In *Blue Cross & Blue Shield*, the Minnesota Supreme Court rejected a similar argument. There, the court concluded that "the agency decision-maker owes no deference to any party in an administrative proceeding, nor to the findings, conclusions, or recommendations of the ALJ." *Blue Cross & Blue Shield*, 624 N.W.2d at 278. The supreme court reversed the "court of appeals' ruling that deference should be accorded the recommendations of the ALJ." *Id.* As the court observed, "[Hearing examiners'] functions are subordinate to a reviewing agency's ... power.... [T]he agency is not bound

by the findings and recommendations of the hearing examiner." *City of Moorhead v. Minn. Pub. Utils. Comm'n*, 343 N.W.2d 843, 847 (Minn.1984) (quotation and citation omitted). Accordingly, appellant's argument regarding the commissioner's rejection of the referee's recommendation is without merit.

More generally, appellant does not show that she was denied a meaningful opportunity to present her case, the hallmark of an individual's right to due process of law. Appellant does not explain what *process* she was allegedly denied. Contrary to her assertion, the record establishes that appellant received notice and a meaningful opportunity to be heard at every level of the investigation and subsequent decision-making process. Appellant requested reconsideration of the department's initial decision and was represented by counsel at an administrative hearing, where she was given the opportunity to present evidence. The record was then reviewed by the district court following appeal of the commissioner's final order. We conclude that appellant's right to procedural due process was not violated.

### IV.

Appellant also argues that the commissioner's decision "violates public policy." Appellant cites an appended *Newsweek* article documenting the national shortage of nurses. Appellant cites no caselaw suggesting that this court should consider such policy arguments in this context. In fact, in other areas of the law in which policy considerations are relevant to our decision-making, we regularly require a well-defined and explicit public policy codified by the legislature before we will consider its relevance. Generalized policy interests are not sufficient. *See, e.g., City of Brooklyn Ctr. v. Law Enforcement Labor Servs., Inc.*, 635 N.W.2d 236, 241

(Minn.App.2001), *review denied* (Minn. Dec. 11, 2001) ("To be applicable, the public policy exception must involve a policy that is well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." (quotation omitted)). Without more, appellant's broad, conclusory, and unsubstantiated public-policy argument is without merit.

## V.

 We now reach the issue of whether the commissioner's decision is affected by an error of law. When an agency bases its decision on statutory interpretation, we are presented with a question of law, which we review de novo. *In re Denial of Eller Media Co.'s Applications for Outdoor Adver. Device Permits,* 664 N.W.2d 1, 7 (Minn.2003).

 The goal of statutory interpretation is to effectuate the intent of the legislature. *Educ. Minn.-Chisholm v. Indep. Sch. Dist. No. 695,* 662 N.W.2d 139, 143 (Minn.2003). If the meaning of a statute is unambiguous, then we interpret the statute's text according to its plain language. *Molloy v. Meier,* 679 N.W.2d 711, 723 (Minn.2004). But if a statute is ambiguous, we apply other canons of construction to discern the legislature's intent. *See Gomon v. Northland Family Physicians, Ltd.,* 645 N.W.2d 413, 416 (Minn.2002).

The Minnesota Vulnerable Adults Act mandates the reporting of "maltreatment" of vulnerable adults. Minn.Stat. § 626.557, subd. 1 (2006). "Maltreatment" includes abuse as defined under the Act. Minn.Stat. § 626.5572, subd. 15 (2006). The act defines "abuse" as

(b) [c]onduct which is not an accident or therapeutic conduct as defined in this section, which produces or could reasonably be expected to produce physical pain or injury or emotional distress including, but not limited to, the following:

(1) hitting, slapping, kicking, pinching, biting, or corporal punishment of a vulnerable adult;

(2) use of repeated or malicious oral, written, or gestured language toward a vulnerable adult or the treatment of a vulnerable adult which would be considered by a reasonable person to be disparaging, derogatory, humiliating, harassing, or threatening;

(3) use of any aversive or deprivation procedure, unreasonable confinement, or involuntary seclusion, including the forced separation of the vulnerable adult from other persons against the will of the vulnerable adult ...; and

(4) use of any aversive or deprivation procedures for persons with developmental disabilities or related conditions not authorized under section 245.825.

*Id.,* subd. 2(b) (2006).

Resolution of this issue turns on the meaning of "[c]onduct ... which ... could reasonably be expected to produce ... emotional distress" in subdivision 2(b). *Id.* Respondent argues, and the commissioner concluded, that appellant's oral statement: "I forgot to put my [f-cking] gloves on and it's your fault, now you're going to [sh-t] all over my hands, you dumb [f-cker]" is such conduct within the meaning of the statute. We disagree.

 Appellant seizes on the general standard identified in 2(b) and urges us to apply the text essentially without reference to subsections (1) through (4). But it is a cardinal rule of statutory interpretation that we read each statutory provision in reference to the whole statute. *State v. Johnson,* 713 N.W.2d 64, 66 (Minn.App. 2006). As such, we do not interpret "[c]onduct ... which ... could reasonably be expected to produce ... emotional dis-

tress" in a vacuum or based on our subjective senses of the sorts of conduct that would likely produce emotional distress in another. Minn.Stat. § 626.5572, subd. 2(b). Here, the legislature has enumerated several examples of such conduct to direct our application of the statute. We must start with those examples to interpret the meaning of the operative language. If appellant's statement satisfies an enumerated provision therein, the statement undoubtedly qualifies as abuse under the statute.

Subsection (2) is the only provision of the statute that arguably encompasses the conduct respondent alleges to be abuse here. *Id.,* subd. 2(b)(2). Subsection (2) makes the "use of *repeated* or *malicious* oral, written, or gestured language toward a vulnerable adult or the treatment of a vulnerable adult which would be considered by a reasonable person to be disparaging, derogatory, humiliating, harassing, or threatening" conduct which could reasonably be expected to produce emotional distress. *Id.* (emphasis added).

But appellant's oral statement at issue is not afoul of the text of subsection (2). First, it is undisputed that there are no *repeated* statements at issue; neither was the sole statement *malicious.* To be malicious, conduct must be carried out with evil intent. *See The American Heritage College Dictionary* 837 (4th ed.2002) (defining "malicious" as "[h]aving the nature of or resulting from malice" and defining "malice" as "[a] desire to harm others or see others suffer"). Here, respondent made no such showing, the commissioner made no such finding, and respondent has not asserted that the statement was made with malicious intent. Moreover, other than the statement itself, there is no evidence in the record suggesting that the statement was malicious. Appellant's statement alone does not necessarily

evince an evil intent; the statement, albeit humiliating and disparaging to the recipient, may have stemmed from transitory frustration and been made without any intent to harm or discomfort R.J.

Because appellant's statement was neither repeated nor malicious, for the statement to fall within the text of subsection (2) it must constitute "treatment ... which would be considered by a reasonable person to be disparaging, derogatory, humiliating, harassing, or threatening." Minn. Stat. § 626.5572, subd. 2(b)(2). At oral argument, respondent maintained that appellant's statement was "treatment" within the meaning of subsection (2). We disagree. We do not doubt that a reasonable person would find appellant's statement "disparaging, derogatory, humiliating [or] harassing," but the oral statement alone cannot be construed as "treatment" within the meaning of subsection (2) consistent with accepted principles of statutory interpretation.

We construe a statute, whenever possible, "to give effect to all its provisions." Minn.Stat. § 645.16 (2006). "[N]o word, phrase, or sentence should be deemed superfluous, void, or insignificant." *Am. Family Ins. Group v. Schroedl,* 616 N.W.2d 273, 277 (Minn.2000) (quotation omitted). Respondent's broad application of "treatment" strips the words "repeated" and "malicious" of their meanings and negates the first portion of the subsection, which makes "oral, written, or gestured language" conduct reasonably expected to produce emotional distress only if it is *repeated* or *malicious.* If respondent's interpretation had been intended, the drafters would have omitted the first 16 words of subsection (2) and begun the subsection with the word "treatment." We will not presume such inefficient draftsmanship on the part of the legislature. Appellant's isolated non-malicious statement is not

"treatment" within the meaning of subsection (2).

Respondent's final argument is that the failure of the statement to fall under one of the enumerated subsections is not fatal because subdivision (b) does not limit the definition of conduct reasonably expected to produce emotional distress to subsections (1) through (4). Instead, the statute provides that the definition of abuse "includ[es], but [is] not limited to, the following [examples.]" Minn.Stat. § 626.5572, subd. 2(b). Based on the text of the statute, we agree with respondent that, theoretically, conduct need not satisfy one of the subsections to constitute abuse under the statute. And deciding what non-enumerated conduct falls within this general ambit necessarily involves the exercise of discretion. But that notwithstanding, subsections (1) through (4) are highly relevant to our interpretation of the more general statutory language, i.e., "[c]onduct ... which ... could reasonably be expected to produce ... emotional distress." *Id.* Contrary to respondent's argument, the legislature's direction that the enumerated examples of abuse are illustrative is no license to disregard those provisions. Statutory construction is a "holistic endeavor." *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 371, 108 S.Ct. 626, 630, 98 L.Ed.2d 740 (1988). Our regard for the whole statute works to ensure that an isolated portion of a statute is not interpreted inconsistently with other portions of the same statute.

Here, we interpret the meaning of the more general statutory language in reliance on the type and character of the specific language in subsections (1) through (4). Subsections (1) through (4) describe the sorts of conduct that can reasonably be expected to produce emotional distress. Minn.Stat. § 626.5572, subd.

2(b)(1)-(4). Each of the subsections requires egregious conduct. Subsection (1) encompasses a physical attack on a vulnerable adult; subsection (2) describes the limited circumstances in which language, and treatment more generally, constitute abuse; while subsections (3) and (4) encompass deprivation procedures, unreasonable confinement, or the forced separation of a vulnerable adult. *Id.* Moreover, part (a) of subdivision (2) identifies circumstances in which criminal acts constitute abuse. *Id.*, subd. 2(a)(1)-(4). We do not think that appellant's single and non-malicious statement can be construed as conduct likely to produce emotional distress without diminishing the high standards that subsections (1) through (4) set for a finding of abuse. The consequences of a finding of abuse are weighty. The entire statute clearly reflects a purpose to protect vulnerable adults, but while also ensuring that health-care workers are not subject to disqualification unless they have engaged in serious and egregious conduct.

We neither condone appellant's behavior nor rule out other forms of employment discipline, including termination as occurred here, as available means to protect vulnerable adults and deter such offensive conduct. But we conclude that appellant's isolated non-malicious statement is not, of itself, "[c]onduct ... which ... could reasonably be expected to produce ... emotional distress," under Minn.Stat. § 626.5572, subd. 2(b).

## DECISION

We agree with the district court that the commissioner's decision was supported by substantial evidence, was not arbitrary and capricious, and did not violate appellant's right to procedural due process. But because we conclude that the commissioner's

decision is affected by an error of law, we reverse.

**Reversed.**