*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

## STATE OF MINNESOTA
## IN COURT OF APPEALS
## A15-0226

Beth Ann Balenger,
Appellant,

vs.

State of Minnesota, Department of Health,
Respondent.

**Filed November 23, 2015**
**Affirmed**
**Connolly, Judge**

Hennepin County District Court
File No. 27-CV-14-8434

Lateesa T. Ward, Ward & Ward, Minneapolis, Minnesota (for appellant)

Lori Swanson, Attorney General, Audrey K. Manka, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Considered and decided by Reyes, Presiding Judge; Connolly, Judge; and Rodenberg, Judge.

## UNPUBLISHED OPINION

**CONNOLLY**, Judge

Appellant challenges the district court's order affirming a finding of the Department of Health (DOH) that appellant committed maltreatment of a vulnerable

adult. Because we see no denial of due process to appellant and no error of law in the district court's order, because substantial evidence supports the district court's decision, and because that decision was not arbitrary and capricious, we affirm.

**FACTS**

Appellant Beth Balenger was the owner of Unity Health Care (Unity), an agency that provided services to the residents of a House With Services (HWS); she was also the director of operations at the HWS. On September 8, 2011, S.C., a 47-year-old vulnerable-adult female with chronic pulmonary disease for which she carried an oxygen tank, uncontrolled diabetes, and memory deficits, moved into the HWS. Conflicts developed between S.C. and Unity staff because S.C. would not take showers when directed to do so and repeatedly smoked while using an oxygen tank.

On the morning of September 27, 2011, S.C. was told that she should take a shower before her doctor's appointment that afternoon. She refused, saying she liked to shower in the evening. Later that morning, S.C. went outside the HWS on her scooter; she was both smoking and using an oxygen tank. Appellant was outside watering the garden with a hose. She first directed the hose at S.C., wetting her; then took a bottle of shampoo and rubbed it on S.C.'s face, hair, and clothing.

The Office of Health Facility Complaints (OHFC) received two reports of this incident. One was from a member of the community who was driving by and saw the incident; the other was from a DOH employee who, when at the HWS, was asked by S.C. if appellant had the right to give S.C. a shower. The OHFC conducted an investigation,

which resulted in the DOH issuing a finding of maltreatment and advising appellant that she had a right to a hearing and to administrative reconsideration.

In September 2012, a hearing was conducted before a human services judge (HSJ), who, in January 2013, issued proposed findings and conclusions and recommended that the maltreatment finding be reversed.

The OHFC submitted exceptions to the HSJ's recommendation. In December 2013, a delegate of the DOH commissioner (the delegate) issued a proposed final order adopting parts of the HSJ's report, but making additional findings and affirming the DOH maltreatment finding. After both parties had submitted comments on the proposed final order, the delegate, in February 2014, issued a final order affirming the maltreatment finding.

Appellant requested reconsideration, and, in April 2014, the DOH issued a "final, final order," again affirming the maltreatment finding. Appellant sought review in the district court, which, after oral argument, issued an order affirming the maltreatment finding.

Appellant now challenges that order, arguing that (1) she was deprived of due process, (2) the order contained errors of law, (3) the maltreatment finding was not supported by substantial evidence, and (4) the order was arbitrary and capricious.

## DECISION

Where "the [district] court is itself acting as an appellate tribunal with respect to the agency decision, this court will independently review the agency's record." *In re Hutchinson*, 440 N.W.2d 171, 175 (Minn. App. 1989) (quotations and citations omitted),

3

*review denied* (Minn. Aug. 9, 1989). "[I]f the ruling by the agency decision-maker is supported by substantial evidence, it must be affirmed." *In re Excess Surplus Status of Blue Cross & Blue Shield of Minn.*, 624 N.W.2d 264, 279 (Minn. 2001).

> The substantial evidence test requires a reviewing court to evaluate the evidence relied upon by the agency in view of the entire record as submitted. If an administrative agency engages in reasoned decisionmaking, the court will affirm, even though it may have reached a different conclusion had it been the factfinder.

*Cable Commc'ns Bd. v. Nor-west Cable Commc'ns P'ship*, 356 N.W.2d 658, 668-69 (Minn. 1984) (quotations and citations omitted).

## 1.    Due Process

> Whether the government has violated a person's procedural due process rights is a question of law that we review de novo. We conduct a two-step analysis to determine whether the government has violated an individual's procedural due process rights. First, we must identify whether the government has deprived the individual of a protected life, liberty, or property interest. If the government's action does not deprive an individual of such an interest, then no due process is due. On the other hand, if the government's action deprives an individual of a protected interest, then the second step requires us to determine whether the procedures followed by the government were constitutionally sufficient. To determine the constitutional adequacy of specific procedures . . . [we] consider first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

4

*Sawh v. City of Lino Lakes*, 823 N.W.2d 627, 632 (Minn. 2012) (quotations and citations omitted).

Appellant argues that, because she was not notified prior to the delegate's April 2014 order that her application of shampoo to S.C. would be considered maltreatment of a vulnerable adult, she could not defend against that charge and was therefore denied due process. But, in March 2012, appellant had been sent notice of the DOH finding that she had maltreated a resident, specifically that she "sprayed [the resident] with water using a garden hose in the front yard of the facility saturating her clothing and then squirted shampoo all over [the resident's] hair and clothes stating, 'I guess that means you're going to take the shower now doesn't it?'" Thus, appellant had notice six months before the September 2012 hearing that her putting shampoo on S.C. was part of the conduct considered to be maltreatment.

Moreover, during the OHFC investigation before that hearing, appellant was questioned about her application of shampoo to S.C. She first denied that she had any shampoo, then, when told that suds had been seen on the ground, said she was trying to remove lice from S.C.'s hair.

> Q. Did you have any soap or detergent or any type of chemical out there, . . . in the yard?
> A. No.
>     . . . .
> Q. Um, part of the information I have is that there was suds on the ground.
> A. There weren't suds on the ground. I didn't have any chemicals outside, um, I went into the house and I retrieved some shampoo because [S.C.] had to have, uh, something like a lice check or, uh, shampoo for lice, uh, done to her hair. . .

Thus, appellant had notice that her putting shampoo on S.C.'s hair outside was part of the incident giving rise to the maltreatment finding, and she was not deprived of the opportunity to present a defense. Moreover, the transcript confirms the finding that appellant denied having shampoo and did not mention trying to remove lice from S.C.'s hair until after she was told that suds had been seen on the ground.

As to the second factor, the procedures used by DOH here do not present a risk of depriving an individual of the right to notification. Appellant was provided with the DOH finding and allowed to present evidence and testify. Finally, appellant's view that an individual must be informed of every act that could possibly be considered maltreatment under the vulnerable adults act, Minn. Stat. § 626.5572, subd. 15 (2014) (defining maltreatment as abuse or neglect), would impose a significant fiscal and administrative burden, even supposing that it were possible to list every act that could be maltreatment.

Appellant was not deprived of due process.

## 2.     Errors of Law

Appellant argues that the delegate "made an error of law when it determined [her] actions were maltreatment, and not a therapeutic mistake." But an error in providing therapeutic treatment to S.C. would be related to whether S.C. had been neglected, not whether she had been abused. *See* Minn. Stat. § 626.5572, subd. 2(b) (2014) (defining abuse as "[c]onduct which is not . . . therapeutic conduct); Minn. Stat. § 626.5572, subd. 17(c)(4) (2014) (defining neglect not to include an error in the provision of therapeutic

6

conduct that does not necessitate medical or mental health care). Appellant was not accused of neglect, but rather of abuse, so her argument that her treatment of S.C. was actually a therapeutic mistake is irrelevant.

Therapeutic conduct is defined as "the provision of . . . personal care services done in good faith in the interests of the vulnerable adult." Minn. Stat. § 626.5572, subd. 20 (2014). The delegate found that:

> It was not in the interest of [S.C.] to have her hair shampooed with lice shampoo outside of the facility when she did not have lice and there was no doctor's order for lice shampoo to be used on [her]. . . . It was not in [S.C.'s] interest to have her hair shampooed while she was outside the facility.
> Appellant did not act in good faith by hosing down [S.C.] and applying lice shampoo without having an order for treatment of lice. . . . I find that spraying the scooter and [S.C.] was a pretext to force [S.C.] to take a shower against her will.
> I find it more likely than not that appellant, out of frustration [caused by] dealing with the noncompliant [S.C.], emotionally abused her by hosing her down outside and putting shampoo in her hair to force her to take a shower.

The district court did not err in concluding that appellant's spraying S.C. with a hose and putting shampoo on her as she sat outdoors on her scooter was not "the provision of . . . personal care services done in good faith in the interest of the vulnerable adult" within the meaning of Minn. Stat. § 626.5572, subd. 20.

Appellant relies on *In re Staley*, 730 N.W.2d 289 (Minn. App. 2007), to argue that, because her conduct was not egregious, it was not maltreatment, and states that "[t]he [district] court's analysis of *Staley* is blatantly flawed." *Staley* concerned a nursing assistant who made a single offensive remark to a resident and was terminated for oral

abuse of that resident. *Id.* at 292. This court concluded that the statement, although disparaging, derogatory, humiliating, or harassing, was not repeated or malicious and therefore did not come under the "language" prong of Minn. Stat. § 626.5572, subd. 2(b)(2) (defining abuse as including the "use of repeated or malicious oral, written, or gestured language toward a vulnerable adult or the treatment of a vulnerable adult which would be considered by a reasonable person to be disparaging, derogatory, humiliating, harassing, or threatening"), and was not "treatment" and therefore did not come under the "treatment" prong. *Id.* at 298-99. But treatment, specifically appellant's treatment of S.C. in spraying her with water and rubbing shampoo on her outdoors and in public, was at issue here, and a reasonable person would have considered that treatment disparaging, derogatory, humiliating, harassing, or threatening, thus bringing it under the statutory definition of abuse of a vulnerable adult. *See* Minn. Stat. § 626.5572, subd. 2(b)(2); *see also* Minn. Stat. § 626.5572, subd. 15 (defining maltreatment as abuse).

There was no error of law in the district court's interpretation of the relevant statutes or of *Staley*.

3.    **Substantial Evidence**

Substantial evidence is (1) evidence that a reasonable mind might accept as adequate to support a conclusion; (2) more than a scintilla of evidence, some evidence, or any evidence; and (3) the evidence considered in its entirety. *Cable Commc'ns Bd.*, 356 N.W.2d at 668. The delegate's decision was based on two "key facts": first, "a community member corroborated [S.C.'s] allegation that [a]ppellant deliberately doused her with [water from] the garden hose while she was seated on her scooter outside, in

8

front of the residence, in full view of the street"; second, "by her own admission, [a]ppellant put shampoo on [S.C.'s] head also while they were outside." Substantial evidence supports these factual findings.

The community member reported that, as she was driving by the HWS, she saw a woman matching appellant's description pointing a stream of water from a hose at another woman, who was in a wheelchair, was drenched, and was putting up her hands to try to keep the water away. The investigator reported that:

> [S.C.] said to [appellant] you gotta be kidding, you're not going to douse me with the hose and [appellant] said no, I would never do that. They continued and then [appellant] got closer to [S.C.] and then the water actually hit her, hit [S.C.]. Then she said the next thing she knew [appellant] held the hose straight out at her and was getting her all wet. [S.C.] was fully clothed and . . . she said [appellant] hosed her down. [Appellant] then turned her back for a minute and turned around and had a shampoo bottle in her hand and started putting shampoo all over [S.C.] and rubbing it in her body, in her hair, in her clothes and then . . . .
> . . . .[S.C.] said she was mortified . . . because neighbors were out in the yard and she felt very, very uncomfortable with that.

Thus, substantial evidence supported the delegate's finding that appellant had directed water from a hose at S.C. and applied shampoo to S.C. while they were outside.

4.     **Arbitrary and Capricious**

The delegate's decision was not arbitrary and capricious if there was a rational connection between the facts found and the choice made. *See In re Review of 2005 Annual Automatic Adjustment of Charges for all Elec. and Gas Utilities*, 768 N.W.2d 112, 120 (Minn. 2009).

9

Appellant relies on *Blue Cross*, 624 N.W.2d at 278, for the proposition that "[r]ejection of the ALJ's recommendations without explanation[,] however, may suggest that the agency exercised its will rather than its judgment and was therefore arbitrary and capricious." But the HSJ's recommendation that no maltreatment be found was not rejected without explanation: the delegate explained that the HSJ declined to give any weight to the report of the community member, "a neutral third party who happened to be driving by," and whose report both the DOH and the delegate saw as "the critical piece of evidence." The delegate noted that "[a]ppellant argues that inconsistencies between [S.C.'s] and the community member's statements are such that they negate the community member's report as corroboration" but that "the inconsistencies . . . are readily explained by the fact that the community member was driving by in a car and only saw the incident for a brief period of time" and that S.C. and the community member "[had] different vantage points relative to the hose."

Our evaluation of "the evidence relied upon by the agency in view of the entire record" indicates that "[the] administrative agency engage[d] in reasoned decisionmaking," *see Cable Commc'ns Bd.*, 356 N.W.2d at 668-69, and, because "the ruling by the agency decision-maker is supported by substantial evidence, it must be affirmed." *See Blue Cross*, 624 N.W.2d at 279.

**Affirmed.**